**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

TYRONE HENDERSON, *et al.*,
*on behalf of themselves and all others*
*similarly situated,*

                Plaintiffs,

v.                                       Civil Action No: 3:14-cv-679

TRANS UNION, LLC, *et al.*,

                Defendants.

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR**
**MOTION FOR CLASS CERTIFICATION**

      The Plaintiffs, by counsel, respectfully submit the following memorandum of law as their

reply brief in support of their Motion for Class Certification.

## I.    OVERVIEW

      Trans Union acknowledges that it follows a uniform process to "comply" with 15 U.S.C.

§ 1681k(a). Def's Opp. at 6-8.  And it does not challenge Plaintiffs' satisfaction of most elements

of Fed. R. Civ. P. 23.[1] Instead, Defendant asserts limited objections to Rule 23 commonality,

typicality and predominance.  But each such challenge is premised on an erroneous view of the

statute or is otherwise addressed by a narrowed class definition.[2]  Despite its length and

recharacterization of the Plaintiffs' merits facts, Defendant's opposition really boils down to just

four substantive challenges to class certification.

---

[1] Defendant does not contest that Plaintiff meets the Rule 23 thresholds numerosity, identifiability, ascertainability, adequacy, manageability and superiority.

[2] Defendant also argues generally that it did not violate § 1681k(a)(1) because it is permitted to generate, print and mail its notice letters the day after it furnishes a triggering report.  Plaintiff addresses this merits (non-Rule 23) argument herein.

First, Trans Union contends that Plaintiff Buckley's claim is not in common with or typical of class member claims (or presents predominant individual questions) because Defendant's § 1681k(a)(1) notice could have been received by Buckley before his employer received a final report. This is so, Defendant contends, because only the end-user employer is considered a "user" under § 1681k(a)(1) and because that section is triggered only by the date the employer actually receives its report.

Second and as for Plaintiff Harris, Trans Union agrees that the intermediary agency, B.I.G., Trans Union's customer—is a "user". However, it argues that this would only save claims brought regarding B.I.G. reports (as opposed to those sold to other Trans Union reseller customers) and that the Court should still look only for the date the report was received by the end-user employer.

Defendant also argues as to Commonality that different class members may have suffered different degrees of actual damage (which is mischaracterizes using the standing word "injury") because of the possibility that some consumers received other FCRA notices from other parties.

Finally, Defendant suggests that because it has a statute of limitations defense for the class period before October 3, 2012, individualized questions regarding such defense would predominate for putative class members in that earlier period.

Plaintiffs address each of these four contentions in turn.

## II.     THE MATERIAL FACTS ARE NOT IN DISPUTE

Defendant confirms all of the facts that are material to this motion. "Trans Union does use the same process to send PEER Letters for all employment credit reports that contain public records." Def. Mem. at 21. By this uniform process, the "next day" after Trans Union reports a consumer's public records employment report, it "sends [the consumer's] information to its vendor, who" it claims will mail the notice letter "on that same day". Def.'s Opp. at 7. "[T]he

other compliance method set forth by Section 1681k(a)(2) is not at issue here." Def. Opp. at 4, n.1.

For Buckley, this meant that Trans Union reported an adverse public record report on December 14, 2012, but mailed the PEER notice letter to the consumer on December 15, 2012. Def. Opp. at 13. For Harris, Trans Union's employment report was furnished on July 10, 2013, but its notice letter was not mailed until July 11, 2013. *Id.* at 15. Assuming Trans Union's claimed date of mailing, the notice letters Defendant is required to send out "at the same time" it furnishes its public records reports were printed and mailed the day after Defendant furnished its reports.

Defendant does not contest that "the reseller [B.I.G.] who received public record data about Harris directly from Trans Union may (Plaintiffs allege) also be a 'user' of that report under the FCRA." *Id.* at 24. This is because B.I.G. (Business Information Group) does not simply receive and pass along Trans Union's reports, but also acts as the agent of the employer end-user to "adjudicate" the consumer's eligibility for the job. "BIG provides solutions for all of your organization's talent acquisition and management roles."[3] More specifically, "A full credit report is obtained from one of the three major credit bureaus to show financial history, current credit standing, tax liens, judgments and bankruptcy history. The results are summarized in an easy-to-read format."[4] Thereafter, B.I.G's process is to "capture [the employer's] unique adjudication criteria and systematically apply them to reports[.]"[5] The B.I.G. process "[e]nable[s] automation in the hiring process by triggering next steps for reports that pass" and by "[e]nsur[ing] that [the employer's] selection criteria are uniformly applied.[6] By "[a]utomating the adjudication criteria

---

[3] https://www.bigreport.com/ last visited October 18, 2015.
[4] https://www.bigreport.com/what-we-do/service-category-pages/background-screening/ selecting "Credit report" last visited October 18, 2015.
[5] Id.
[6] https://www.bigreport.com/why/products/report-scoring-system/ last visited October 18, 2015.

[B.I.G.] ensures consistency and decreases the potential for [the employer's] liability exposure."[7] In fact, B.I.G. integrates its system directly into the employer's H.R. management system "workflow to automatically trigger next steps in the hiring process."[8]

Defendant offers a number of other factual claims or characterizations that are premature, not germane to class certification or immaterial to a § 1681k(a)(1) cause of action. The background check reports for both Plaintiffs contained inaccurate information, but this is immaterial to a claim under § 1681k(a)(1). *Williams v. LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463, at *6 (E.D. Va. Aug. 23, 2007) ("In the § 1681k claims here, by contrast, plaintiffs are claiming that LexisNexis' notice was improper. The claim therefore is entirely independent of the accuracy of the report.").

It is also immaterial whether or not Plaintiffs or any class member received other FCRA notices from another party. None of these notices duplicate, supplant or otherwise provide the information demanded at § 1681k(a)(1). *See, e.g*., 15 U.S.C. §§ 1681b(b)(2) (requiring the consumer's authorization to request and receive a consumer report); 1681b(b)(3) (requiring a user that intends to take an adverse employment action based on a consumer report to provide the consumer a copy of that report before taking such action); 1681m (requiring a user that has taken take an adverse employment action based on a consumer report to provide the consumer notice of such action); *see also Williams v. Telespectrum, Inc.*, No. 3:05CV853, 2006 WL 7067107, at *5 (E.D. Va. Nov. 7, 2006) (rejecting a defense that one FCRA employment notice is unnecessary because consumer also received a notice under a different FCRA section).

---

[7] Id.
[8] Id.

### III.    "AT THE TIME" MEANS AT THE TIME

Plaintiffs have previewed their statute-based explanation of § 1681k(a)(1)'s "at the time" requirement.[9]  Pl.'s Mem. in Supp. of Mot. for Class Cert. at 3-4. Ignoring that opening summary and forecasting its merits defense, Trans Union claims "Courts do not read Section 1681k as requiring simultaneous or contemporaneous notice to consumers." Def. Opp. at 8.  Defendant does not suggest that the Court's determination of this liability question is relevant at the present Rule 23 posture.  Yet, the Court should not assume Plaintiffs' agreement with this defense.  Contrary to Trans Union's assertion—every court to consider the question has reached a conclusion (or opinion in dicta) that is consistent with Plaintiffs' allegation in this case.  Plaintiffs argue that generating, printing and mailing the § 1681k(a)(1) notice letter *the day after* the agency reports its public record information is not the same as sending the notice *"at the time"* Defendant furnishes the report.

In *Williams v. LexisNexis Risk Mgmt. Inc.*, this Court considered the exact same timing claim on the exact same notice procedure: When LexisNexis furnished a consumer's report with an adverse public record, "a computer program automatically sends that consumer's name and address, along with other information, to a spreadsheet file. The spreadsheet file is sent to LexisNexis' 'Compliance' department, usually at the end of each day. The Compliance department uses a mail-merge system, which merges the information in the spreadsheet onto a letter."  This notice letter was then mailed to the consumer "a day after the LexisNexis customer accessed the consumer's report." *Williams v. LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463, at *2 (E.D. Va. Aug. 23, 2007).  Judge Payne certified a class based on this "mail the next day" procedure and denied the defendant summary judgment even under the more rigorous

---

[9] On summary judgment, they will do so with further detail.

pre-*Safeco* threshold.  *See* Pl.'s Mem. in Supp. of Mot. for Class Cert., at 2, n.3.   Trans Union's only attempt to distinguish the Court's ruling is its reseller-user defense and its point that the plaintiff in *Williams* was not then awarded summary judgment.  Def. Opp. at 9,  21.

While courts have considered different thresholds as to whether or not "at the time" means "at the exact same moment", none have accepted Trans Union's position that "at the time" can mean "the next day." The 'close calls' are when it is sent the same day, but not at the same moment. *See, e.g.*, *Adams v. Nat'l Eng'g Serv. Corp.*, 620 F. Supp. 2d 319, 331-32 (D. Conn. 2009) ("[T]he plain language of section 1681k(a)(1) may leave open the question of precisely when a consumer reporting agency must notify a consumer (e.g., is consumer notification within three hours of electronic transmission of a report a notification "at the time" of the transmission for purposes of section 1681k(1)?)[.]")  Or where there is insufficient evidence to refute an agency's claim that its ordinary procedures was to send the notices the same day as the report. *Rodriguez v. Equifax Info. Servs., LLC*, No. 1:14-CV-01142 AJT, 2015 WL 4417285, at *4 (E.D. Va. July 17, 2015) ("Under the system of notification then in place, a notice to a consumer was triggered and created internally at the same time a report to OPM was generated internally. That notice was then actually printed and mailed to the consumer" on the same day as the report.)

In fact, in the other "favorable" decision Trans Union cites, the Court actually denied the agency summary judgment as to the consumer's § 1681k(a)(1) negligence claim because though the notice was dated the same day as the report, it was disputed as to whether it was actually mailed the same day.  *Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1351-1352, 1364 (N.D. Ga. 2015).  As the court pointed out, "[A]t least two district courts have "interpreted 'at the time' to mean 'at the same time.' " *Adams,* 620 F. Supp. 2d at 331 (*citing Poore v. Sterling Testing*

*Sys.,* 410 F. Supp. 2d 557, 572 (E.D. Ky. 2006)).” *Smith v. E-Backgroundchecks.com, Inc.*, 81 F. Supp. 3d 1342, 1362 (N.D. Ga. 2015).

And the Eastern District of Pennsylvania has explained that to comply with § 1681k(a)(1), “When a consumer reporting agency furnishes a report that contains matters of public record likely to have an adverse effect upon the consumer's ability to obtain employment, it is obligated to [ . . . ] notify the consumer *contemporaneously with the transmission of the report* to the user.” *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 438 (E.D. Pa. 2010) (emphasis added).

## IV.    §1681k(a)(1) IS TRIGGERED WHEN TRANS UNION FURNISHES ITS REPORT IN THE DIRECTION OF THE USER

The basis for nearly every challenge Defendant makes to class certification is premised upon its contention that it does not always furnish its reports directly to the employer.  This defense and position is based on several false premises.

As Trans Union points out, the § 1681k(a)(1) notification must be “at the time such public record information is reported to the user[.]” Def. Opp. at 4. Defendant contends that for reports furnished to resellers, the required timing of its notices is uncertain and—for it—unknown as it does not know when that the end-user employer will later receive and review that report from the reseller.  By Defendant’s litigation view, the Defendant could never know when to send the required § 1681k(a)(1) notice as it would not know when the end-user received the report—a variable that under Defendant’s view is necessary to know when “at the time” was.  If Trans Union’s interpretation were correct, CRAs with potential governance by § 1681k(a) would have to await a *post hac* review to determine if and when the notice was required.  The timing of the § 1681k(a)(1) notice cannot depend upon how it was used or interpreted subsequent to delivery of the report by the CRA.  Otherwise, the CRA would have no way of knowing whether it was complying with the law.  The statute would be unconstitutional on void for vagueness grounds

(which no court has ever found and no defendant has ever argued).  A constitutionally valid statute gives actors covered by the statute reasonable notice of proscribed conduct.  *Schliefer by Schliefer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 2010).  Such statutes provide adequate advance notice of what constitutes permissible behavior.  *Id.* (suggesting that a valid statute provides "prior warning" that conduct is prohibited).  The boundaries of permissible conduct set out in a valid statute "***do not require reference to later actions by a third party***."  *City of Chicago v. Morales*, 527 U.S. 41, 58-59 (1999)(emphasis added).

Initially, and without even considering Trans Union's novel constriction of the word "user", the Court can reject Defendant's litigation construct upon the text of the statute alone.  Section 1681k(a)(1) does not concern itself with the *date of receipt* by the user but instead with the time at which Trans Union "reports" the information "to" the user.  The verb "report" is an action taken *by Trans Union*.  Its most relevant definition is "to give information about."[10]  And the preposition "to" in this context is "used to indicate the direction of something."[11]  The date that would matter – again, even assuming a reseller is not a user – would be the date that Trans Union took action to "give information" regarding the consumer "in the direction of" the user.  Whether directly or through an intermediary, Trans Union's report was made in the direction of the end-user.  In fact, Trans Union's own documents refute the claim it now makes.  For example, the credit report it disclosed in this case and otherwise to Mr. Buckley identifies as the recipient, "PERSONNEL DECISIONS via HIRERIGHT" and the date the report was furnished as December 14, 2012.  Dkt No. 59-7 at 16.  Thus, in the "real world", Trans Union understands and

---

[10] http://www.merriam-webster.com/dictionary/report last visited October 20, 2015.
[11] http://www.merriam-webster.com/dictionary/to last visited October 20, 2015.

believes as do the Plaintiffs – Trans Union reported the information to Personnel Decisions (the end-user) on December 14, 2012, one day before it sent its § 1681k(a)(1) notice.

This FCRA provision and the FCRA generally assume the existence of intermediaries who receive information on behalf of the end-user.  Reporting information to the user through these intermediaries, which are often resellers, is legally the same for Trans Union as reporting to the user directly.   Section 1681b restricts the furnishing of consumer reports by Trans Union "to any person" unless that person has a permissible purpose to request and receive the report.  "Reselling" the report information is not one of these enumerated purposes.  *See* 15 U.S.C. § 1681b(a).  If Trans Union were correct that furnishing to the intermediary is to be considered as separate and apart from furnishing to the end-user, there would never be a legal purpose for it to provide a consumer report to a reseller.  But Trans Union is not correct.  Instead, when Trans Union furnishes a consumer report to a reseller, it is furnishing it to that entity on behalf of the end-user.  The "permissible purpose" and "use" of the report travels and extends from the end-user to the reseller (e.g. B.I.G. and HireRight).

In contrast to the list of other terms expressly defined in the FCRA [§ 1681a(a)-(x)], Congress did not choose to define the term "user."  A word that "is not specifically defined in the statute…should carry its ordinary dictionary meaning."  *Babcock v. BellSouth Advertising and Publishing Corp*., 348 F.3d 73, 77 (4th Cir. 2003).  Thus, "user" means "a person or thing that uses," and "use" as a verb in turn means "to employ for some purpose" or "to avail oneself of." Webster's New Universal Unabridged Dictionary, 2097 (1996).  There is simply no reason that a User cannot also be a reseller.  Trans Union suggests a mutual exclusivity that is not supported by any law or explanation.

Defendant's construction also must ignore Congress' separate use of the words "user" and "end user" (i.e., prospective employer) in the statute. The term "end-user" or "end user" is used in different places in the FCRA but not in § 1681k.  *See* § 1681e(e)(1)(A),  § 1681e(e)(1)(B), § 1681e(e)(2)(A)(i), § 1681e(3), § 1681e(3)(A), § 1681g(a)(3)(A), and § 1681g(a)(3)(C)(i). "User" and "end user" must be different terms.  *Soliman v. Gonzales*, 419 F.3d 276, 283 (4th Cir. 2005) ("where Congress includes particular language in one section of a statute but omits it in another provision of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion") (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)).  Defendant's construct of limiting the term "user" to only the "end user" is therefore contrary to the plain language of the FCRA and is an admission that for Defendant to prevail the word "user" in § 1681k must denote something other than its ordinary meaning.[12]

No court has found as Trans Union suggests[13] - finding that resellers or intermediaries are not "users" because they are not the ultimate destination for a report.  However, many courts have found just the opposite.  In fact, this Court was affirmed on a comparable (or on point) question.

---

[12] Rather than examine the term in the plain meaning of § 1681k(a)(1), Defendant looks to other provisions of the FCRA purportedly to show that the term "user" there applies only to the prospective employer.  Examples that Defendant cites include the adverse action provisions of § 1681b(b) and § 1681m, with which Defendant contends that only the prospective employer can possibly comply.   But these provisions actually disprove Trans Unions interpretation.   Each governs only a subset of "uses" or "users".  For example, § 1681b(b)(3)(A) applies only to persons "taking any adverse action based in whole or in part on [use of] the report" while §1681m(a) imposes duties on "users taking adverse actions on basis of information contained in consumer reports."  If a "user" was only the entity that took such adverse employment action, then the language defining the subset and trigger for these sections would be superfluous.  The sections would simply say, "any user shall do as follows."

[13] Trans Union is the most sued company in FCRA history with more FCRA decisions and jury losses than any defendant known to Plaintiffs' counsel.  Certainly if such a decision existed, Trans Union would have known of and cited it.

*Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987).  As the

Fourth Circuit explained:

> Ryan contends that the Credit Union had no right to indemnification by her because she (Ryan) could not be directly liable to Yohay for a violation of the FCRA because she was not a "user." To begin with, that latter argument is faulty since the term "user" includes "the ultimate destination of a credit report" as well as "the person who acquires [a credit report] for another." *Boothe v. TRW Credit Data,* 557 F.Supp. 66, 71. The Credit Union obtained the information about Yohay from CBI for the purpose of forwarding the same to Ryan. Thereafter, the Credit Union did forward the information to Ryan. Accordingly, Ryan was a "user" and could have been asserted by Yohay to be civilly liable to him pursuant to section 1681n.

*Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 973 (4th Cir. 1987).[14]

Other courts have similarly held. *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41, 49 (2d Cir.

1997) ("In situations where one person obtains a credit report for the use of another, moreover,

'the term 'user' includes 'the ultimate destination of a credit report' as well as 'the person who

acquires [a credit report] for another.' ")(citations omitted); *Myers v. Bennett Law Offices*, 238 F.

Supp. 2d 1196, 1201 (D. Nev. 2002) ("The Court is not aware of statute or case-law that suggests

the transfer has to be directly from the consumer reporting agency to the end user to form

liability under the FCRA."); *Zeller v. Samia,* 758 F.Supp. 775, 779 n. 2 (D.Mass.1991) ("The

defendant ... argues that FCRA does not apply because he is not a 'user of information.' ... This

argument, however, is without merit. It is undisputed that the defendant both requested and

received the plaintiff's credit report. Therefore, the defendant is a 'user of information' under the

Act[.]").

In the case of a Reseller the Federal Trade Commission has already explained this §

1681k(a)(1) requirement.   In a well-publicized consent decree filed in *F.T.C. v. TRW Inc.*, 784 F.

---

[14] The most frequent section under which the meaning of "user" has been litigated is § 1681q, which, before amendment, prohibited a "user" from obtaining a consumer report under false pretense.

Supp. 361, 364 (N.D. Tex. 1991), the Agency detailed TRW's required compliance.  TRW's

employment reports were nearly always furnished to a Reseller "subscriber", just as Trans

Union's today.  The FTC instructed that whenever TRW (predecessor to Experian) provided a

"consumer report for employment purposes",

> and such Consumer Report contains public record information that is likely to
> have an adverse effect upon a Consumer's ability to obtain employment, either;
> a. Maintain strict procedures designed to insure that public record information that
> is likely to have an adverse effect on a Consumer's ability to obtain employment
> is complete and up-to-date as provided in § 613(2) of the FCRA; or
> **b. At the time such public record information is reported to the Subscriber,**
> **notify the Consumer of the Subscriber's name and address and that:**
> **i. Such public record information was included in the Consumer Report that**
> **was provided to the Subscriber;**
> **ii. The Subscriber intended to resell the Consumer Report for Employment**
> **Purposes to another Person;** and
> iii. The Consumer may contact the Subscriber to learn the name and address of
> the Person to whom the Subscriber resold such Consumer Report for Employment
> Purposes[.]

*Id*.  A FTC position taken as an enforcement action and consent decree is a decision of the

Commission and a persuasive statement of the FTC view of the law.[15]   And it is certainly more

relevant than Defendant's complaint that Plaintiffs substituted "subscriber" for "user" in parts of

their brief.

While the FTC was the previous overseer of the FCRA, that governance has moved to the

Consumer Financial Protection Bureau.  As part of that responsibility, the CFPB was tasked with

creating a uniform "Notice to Users of Consumer Reports: Obligations of Users Under the FCRA."

Trans Union is aware of this notice as it provides it to its subscribers (including resellers) and posts

---

[15] *Williams v. Telespectrum, Inc.*, CIV.A.3:05CV853, 2007 WL 6787411 (E.D. Va. June 1, 2007)
("The FTC provided guiding interpretation of the FCRA. Congress has granted the FTC the
authority to prescribe trade regulations and other rules in regulation of the FCRA. Pub.L. No.
106–102 (codified in relevant part at 15 U.S.C. §§ 6801–6809 and §§ 6821–6827)."

it on its website.[16]   Exhibit "1".   The Notice detailing duties of users has a number of sections including a general set of obligations (I.), obligations when the user is a creditor (II.) or an employer (III.), and obligations of users of medical information (VI.) and of pre-screened marketing lists (VII.).   But relevant here is Section VIII., which is titled OBLIGATIONS OF RESELLERS.   Id. at 5-6.   Thus, both the FTC and the CFPB consider reseller subscribers "users" under the FCRA.

As addressed above, Trans Union also admits that the reseller to whom it furnished Mr. Harris' report, B.I.G., was an actual "end-user" because it adjudicates employment eligibility for its employer customers.   When a consumer reporting agency "adjudicates employees based on a rubric set out by the member employer and classifies the employees as competitive or noncompetitive" as the employer's agent, the CRA is governed by both the employment provisions for users and as a consumer reporting agency.   *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 542 (E.D. Pa. 2012);*Prescott v. HireRight Solutions, Inc*., Case No. CV-13-08953-MFW (PLAx), slip op. at 15 (C.D. Cal. May 14, 2014) (Finding that HireRight may be not only a "user", but one that was responsible to provide the notices required at § 1681b(b)(3)), Dkt. No. 59-1.   This Court has also similarly ruled on a related question, finding that a the adjudication by consumer reporting agency First Advantage on behalf of Wells Fargo constituted an "adverse action."   *Manuel v. Wells Fargo Bank, Nat. Ass'n*, No. 3:14CV238, 2015 WL 4994538, at *12 (E.D. Va. Aug. 19, 2015).

## V.      RULE 23 CLASS CERTIFICATION REMAINS APPROPRIATE

---

[16]https://www.transunion.com/docs/rev/business/compliance/Notice_to_Users_of_Consumer_Reports_2012.pdf (last visited October 21, 2015).

### A.       Trans Union Does Not Meaningfully Challenge Commonality[17]

In challenging Rule 23(a) commonality, the Defendant detours almost entirely into its own legal argument – addressed above – that a reseller cannot be a user.  It ignores the proffered questions the Plaintiffs contend are in common with the class:  "The core common questions in this case are (a.) whether Trans Union's notice procedure violated § 1681k(a)(1) as not sent "at the time" of the triggering credit report when it was not ever to be generated or mailed until at least the next business day16; and (b.) whether such violation was willful."  Pl.'s Mem. in Supp. of Mot. for Class Cert. at 14.  Defendant's "user" argument is plainly wrong.  But even if it were not, the "individual" questions or issues that such defense may raise are not Commonality concerns, where "To satisfy this requirement, there need be only a single issue common to the class."  *Manuel v. Wells Fargo Bank, Nat. Ass'n*, No. 3:14CV238, 2015 WL 4994549, at *9 (E.D. Va. Aug. 19, 2015). As Judge Payne explained, "This does *not* mean, of course, that the entire *case* must be decided by a single issue. *Wal–Mart* does not, as Equifax seems to think, require that a common fact be one upon which the entire case be decided "in one stroke." Such a requirement would render the predominance inquiry under Rule 23(b)(3) entirely meaningless. Rather, "[a] single common question will suffice [if] it [is] of such a nature that its determination 'will resolve *an issue* that is central to the validity of each one of the claims in one stroke.' " *EQT,* 764 F.3d at 360 (internal citations omitted) (emphasis added) *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 200 (E.D. Va. 2015).  Plaintiff's proffer of the question of what the "at the time" standard requires and of "willfulness" as common issues is otherwise ignored and unrefuted.  And these remain common

---

[17] Plaintiffs have addressed above Trans Union's suggestion that Commonality ma fail because some consumers received FCRA notices under different statutory sections from third parties, or had inaccurate report.  These points are not elements of a § 1681k(a)(1) claim.

issues even if Trans Union contrives a third issue (the "user" argument) that is not.[18]

Nevertheless, as addressed above, Defendant's attempted insertion of a new "receipt by user" element into a § 1681k(a)(1) trigger is ineffective.  Trans Union was correct in the first place – before it needed to contrive a litigation defense – when it disclosed to the Plaintiffs in their Trans Union reports that it "reported" the subject public records information "to the user" the day before it sent a FCRA notice.  Plaintiffs of course incorporate their argument above.  Defendant's § 1681k(a) notice obligation was triggered when it reported the subject public records information to the end-user's intermediary reseller – itself a "user" and for these purposes the agent of the end-user.

Defendant cannot substantively answer the unrefuted fact that B.I.G. was not only a reseller-user, but as well as user that took an adverse action as to Mr. Harris and the subset of class members about whom Trans Union furnished a report to B.I.G.  Instead, it argues that the group of consumers who were in this B.I.G. category would have a different claim than those as to other resellers.  If the Court found as Defendant suggests, the proper solution is simple: the Court should certify a sub-class and/or narrow the class definition to include only B.I.G. reports. This is exactly what has been done in nearly every FCRA class action certified in and by this Court.  *See, e.g.*, *Soutter v. Equifax Info. Servs., LLC*, 1:10-cv-107 (E.D. Va.); *Milbourne v. JRK Residential Am., LLC*, No. 3:12cv861, 2014 WL 5529731, at *11 (E.D. Va. Oct. 31, 2014) (ordering the revision of the class definition to narrow the class period in response to defendant's statute of limitations predominance argument). "As long as the complainants can be identified in a manner that advances the purpose of Rule 23, procedural fairness permits flexibility." 3 Newberg on Class Actions §

---

[18] Defendant's "Commonality" arguments are really solely Typicality challenges, claiming that the Plaintiffs' claims require different proofs and elements than those of the class.

8:12 (4th ed.) "Holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition." *Bratcher v. Nat'l Standard Life Ins. Co. (In re Monumental Life Ins. Co.)*, 365 F.3d 408, 414 (5th Cir. 2004) *cert. denied*, 125 S.Ct. 277 (2004). If the Court determines that one or more of Trans Union's non-core challenges make sense, its proper disposition would be to define the class in a manner to avoid such defect.

### B.      Plaintiffs' Claims are Typical

Similarly, Trans Union's Typicality challenge is limited to its "receipt by user" argument. Plaintiffs have addressed the argument above. The facts as to Mr. Buckley and Mr. Harris establish a violation of § 1681k(a)(1) and therefore of the putative class.

Further, if Defendant somehow prevails on its argument that only B.I.G. is a FCRA "user", then the case does not go away. Instead, as explained above, the Court should narrow the class definition.

### C.      Common Questions Predominate

Rule 23(a) "commonality" and Rule 23(b)(3) "predominance" are related, but yet distinct burdens *Souter v. Equifax Info. Servs., LLC*, No. 3:10CV107, 2015 WL 1787236, at *25 (E.D. Va. Apr. 15, 2015). ("Whether common questions predominate over individual questions "is a separate inquiry, distinct from the requirements found in Rule 23(a)." *Ealy,* 514 F. App'x at 305 (citing *Wal–Mart,* 131 S.Ct. at 2556)."). Ordinarily, the commonality argument is whether or not particular issues are common questions or individualized ones. But the "predominance" fight is different. The question there is whether the case's common questions are sufficiently material to overwhelm the individual questions that necessarily arise (such as whether a credit report was furnished about a person; whether this occurred during the class period, etc.). In its opposition,

Trans Union is really only arguing commonality problems (which in fact are actually only Typicality concerns), claiming that there exists an important individualized issue – the date of "receipt by user".

Defendant does not make any effort to explain to the Court or argue how such individualized issue (wrong as it may be) could predominate over the other more central common issues proffered in Plaintiffs' opening brief. That is not a "predominance" divide. Plaintiff contends that the issues of liability are all common questions: Does a Notice put in the U.S.P.S. mail a calendar day (or even work day) after the corresponding credit report is furnished constitute sending the notice "at the time" of the report? Are such FCRA violations willful? As the Court recently explained, "Equifax advances no discernible arguments distinguishing between the commonality and predominance inquiries. . . . Equifax is addressing predominance by doubling down on its commonality arguments. That strategy does not work." *Soutter*, 2015 WL 1787236, at *26.

The lone argument Trans Union makes with merit is its assertion of a possible Statute of Limitations defense for the class period prior to October 3, 2012. Though there are substantive reasons why the statute of limitations in this instance would be tolled, or subject to the five-year period at 15 U.S.C. § 1681p, the disagreement is minor. The Court should certify the class using the class period commencement date of October 3, 2012.

## VI.    CONCLUSION

Defendant's final plea – that a decision in *Robins v. Spokeo* may change the landscape for this case – ignores the nature of the informational injury at issue in here. *Dreher v. Experian Info. Solutions, Inc.*, 71 F. Supp. 3d 572, 577 (E.D. Va. 2014); *Manuel v. Wells Fargo Bank, Nat. Ass'n*, No. 3:14CV238, 2015 WL 4994538, at *5 (E.D. Va. Aug. 19, 2015); *see also Ryals v. Strategic*

*Screening Solutions, Inc.*, No. 3:14CV643, 2015 WL 4606168, at \*3 (E.D. Va. July 30, 2015) (applying *Dreher* to a § 1681k(a)(1) claim).  This case is unlike *Spokeo*.  Regardless, if Trans Union wants a stay, it should move for it and Plaintiffs will respond.  The more effective and judicially economic approach will be to proceed with certification of the class to permit Defendant to seek an appeal pursuant to Fed. R. Civ. P. 23(f).

Respectfully Submitted,
**TYRONE HENDERSON,**
**JOSEPH L. BUCKLEY,**
**JONATHAN HARRIS,**
**For themselves and on behalf of all**
**similarly situated individuals.**

By: _____/s/_____
Matthew J. Erausquin, VSB No. 65434
Casey S. Nash, VSB No. 84261
*Counsel for the Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, VA 22314
Tel:    (703) 273-7770
Fax:    (888) 892-3512
matt@clalegal.com
casey@clalegal.com

Leonard A. Bennett, VSB No. 37523
Susan M. Rotkis, VSB No. 40693
*Counsel for Plaintiffs*
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Phone: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com
E-mail:  srotkis@clalegal.com

Dale W. Pittman, VSB No. 15673
*Attorney for Plaintiffs*
THE LAW OFFICE OF DALE W. PITTMAN, P.C.
112-A W Tabb Street
Petersburg, VA 23803-3212

Telephone: (804) 861-6000
Fax: (804) 861-3368
Email: dale@pittmanlawoffice.com

James A. Francis (pro hac vice forthcoming)
David A. Searles (pro hac vice forthcoming)
FRANCIS & MAILMAN, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

John C. Bazaz, VSB No. 70796
*Counsel for Plaintiffs*
LAW OFFICES OF JOHN C. BAZAZ, PLC
4000 Legato Road, Suite 1100
Fairfax, VA 22033
Phone: (703) 272-8455
Fax: (703) 596-4555
Email: jbazaz@bazazlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of October, 2015, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel of record:

Albert E. Hartmann
Michael C. O'Neill
REED SMITH, LLP
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606
Tel: 312-207-2821
Fax: 312-207-6400
Email: ahartmann@reedsmith.com
Email: michael.oniel@reedsmith.com
*Counsel for Trans Union Rental Screening Solutions, Inc.*
*and Trans Union, LLC*

Travis A. Sabalewski
Alison R.W. Toepp
REED SMITH, LLP
901 E. Byrd Street, Ste. 1700
Richmond, VA 23219
Tel: 804-344-3400
Fax: 804-344-3410
Email: tsabalewski@reedsmith.com
Email: atoepp@reedsmith.com
*Counsel for Trans Union Rental Screening Solutions, Inc.*
*and Trans Union, LLC*

_____/s/_____
Casey S. Nash, VSB No. 84261
CONSUMER LITIGATION ASSOCIATES, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
Tel: 703-273-7770
Fax: 888-892-3512
Email: casey@clalegal.com
*Counsel for the Plaintiffs*