IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE HENDERSON, JOSEPH L.
BUCKLEY, and JONATHAN HARRIS,
*on behalf of themselves and all others
similarly situated*,
        Plaintiffs,

v.                                                     Civil Action No. 3:14-cv-00679-JAG

TRANS UNION LLC, and TRANS
UNION RENTAL SCREENING
SOLUTIONS, INC.,
        Defendants.

## OPINION

Two separate employers did not hire two of the plaintiffs[1] based, in part, on information contained in consumer reports furnished by Trans Union LLC ("Trans Union").[2] Section 1681k of the Fair Credit Reporting Act ("FCRA") requires Trans Union to notify the consumer "at the time" it furnishes a consumer report containing certain information "to the user of such consumer report." 15 U.S.C. § 1681k(a). The plaintiffs allege that the process used by Trans Union for mailing these required notices violates § 1681k. The plaintiffs sued Trans Union, and now move to certify a class. Upon due consideration, the Court grants the plaintiffs' motion for class certification, certifying one class that loosely tracks the plaintiffs' proposed class—the Court having made a few edits to ensure that the class satisfies the requirements of Rule 23.

---

[1] This case has three named plaintiffs, Tyrone Henderson, Joseph L. Buckley, and Jonathan Harris. The plaintiffs seek certification on the class claim for violation of § 1681k, brought by Buckley and Harris only.
[2] The plaintiffs filed suit against both Trans Union and Trans Union Rental Screening Solutions, Inc. ("TURSS"), but brought the class claim against Trans Union only.

## I. <u>BACKGROUND</u>

Trans Union generates a notice to consumers—dubbed a "PEER Letter"—when it furnishes a consumer report for employment purposes that contains potentially adverse public record information. "Trans Union automatically triggers the PEER Letter process by gathering the necessary information for the letters at the time the report is furnished. The next day, Trans Union sends that information to its vendor, who—on that same day (except for Sundays)—prints and mails the PEER Letters." (Def.'s Resp. 7.) The FCRA requires these notices. Specifically, § 1681k mandates that:

> A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment *shall . . . at the time such public record information is reported to the user of such consumer report, notify the consumer* of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported . . . .

15 U.S.C. § 1681k(a)(1) (emphasis added).[3]

Trans Union provided employment consumer reports about Buckley and Harris. On December 14, 2012, HireRight, Inc. ("HireRight"), on behalf of Personnel Decisions Research Institutes, Inc. ("PDRI"), requested Buckley's consumer report from Trans Union. Trans Union sent the report, which contained information about Buckley's Chapter 7 bankruptcy. On December 15, 2012, Trans Union mailed a PEER Letter to Buckley. On December 19, 2012, after combining other information it collected with the Trans Union consumer report, HireRight provided PDRI with its report about Buckley. PDRI did not hire Buckley.

---

[3] Section 1681k(a)(2) provides an alternate method of compliance with the FCRA. The parties agree that this alternate method does not apply in this case. (*See* Pls.' Mem. 3 n.5; Def.'s Resp. 4 n.1.)

2

On July 10, 2013, Business Information Group ("BIG"), on behalf of the Independent Order of Foresters ("Foresters"), requested Harris's consumer report from Trans Union. Trans Union sent the report, which contained four public record civil judgments against Harris. On July 11, 2013, Trans Union mailed a PEER Letter to Harris. On July 13, 2013, after combining other information it collected with the Trans Union consumer report, BIG generated a report in which it assigned ratings for different categories of information about Harris. BIG then provided Foresters with its report. Foresters did not hire Harris.

The plaintiffs sued Trans Union for violation of § 1681k based on the timing of Trans Union's Peer Letter process. On November 10, 2015, the Court held a hearing on the plaintiffs' motion for class certification. At the hearing, the Court indicated its intent to certify a class with three subclasses, and granted the plaintiffs leave to add a plaintiff that fell within the third intended subclass. (*See* Order, Nov. 12, 2015.) The plaintiffs did not add an additional plaintiff, instead amending its complaint to narrow their proposed class definition. The plaintiffs proposed the following class:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report furnished to a third-party Reseller by Trans Union LLC, (b) that was furnished for an employment purpose, (c) that contained at least one record of a civil lien, bankruptcy or civil judgment, (d) on or after March 30, 2011, and (e) to whom Trans Union LLC did not place in the United States mail postage pre-paid, on the day it furnished any part of the report containing the public record, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

(Pls.' Proposed Description 2.) The plaintiffs also proposed the following subclass:

3

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report furnished to Business Information Group, Inc. ("B.I.G.") by Trans Union LLC, (b) that was furnished for an employment purpose, (c) that contained at least one record of a civil lien, bankruptcy or civil judgment, (d) on or after March 30, 2011, and (e) to whom Trans Union LLC did not place in the United States mail postage pre-paid, on the day it furnished any part of the report containing the public record, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, officers, directors of Defendants, any attorney appearing in this case, and any judge assigned to hear this action.

(*Id.* at 3.) Trans Union objected to the plaintiffs' proposals for the reasons it stated in its brief and at the November 10, 2015 hearing.

## II. DISCUSSION[4]

Rule 23 of the Federal Rules of Civil Procedure governs class actions, including class certification. The party seeking certification must first satisfy the requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. Fed. R. Civ. P. 23(a). In addition to the requirements of Rule 23(a), the proposed class must fall within at least one of the three types of class actions listed in Rule 23(b). Rule 23(b)(3), the relevant type of class action in this case, requires (5) predominance and (6) superiority. Fed. R. Civ. P. 23(b)(3). Finally, Rule

---

[4] The party seeking class certification bears the burden of proof. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2548 (2011); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir. 2014). When evaluating a motion for class certification, "'the trial court [must be] satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' Frequently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff[s'] underlying claim. That cannot be helped." *Wal-Mart Stores*, 131 S. Ct. at 2552 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Nevertheless, "[t]he likelihood of the plaintiffs' success on the merits . . . is not relevant to the issue of whether certification is proper." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1195 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

4

23(c) requires (7) ascertainability, meaning that "the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)); *see* Fed. R. Civ. P. 23(c)(1)(B). The Court addresses each requirement in turn.

### A. Numerosity

In this case, Trans Union does not challenge that the plaintiffs' proposed class meets the numerosity requirement. For the reasons discussed below, the Court will limit the certified class to only those consumers who were the subject of a consumer report furnished by Trans Union to HireRight or BIG. *See infra* Part II.G. The parties did not submit, nor does the Court know, an estimated number of potential class members in this certified class. The Court does know, however, that Trans Union has sent in excess of 1.25 million notice letters under § 1681k since October 3, 2012,[5] the beginning of the proposed class period. (Pls.' Mem. Ex. 9, at 6.) Thus, the Court comfortably assumes that the class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see, e.g., Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 199 (E.D. Va. 2015) (certifying a class of 1,000 in a case brought under the FCRA); *see also Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (finding "that eighteen is a sufficiently large number to constitute a class").

### B. Commonality

Trans Union's challenge to the commonality requirement fails because there certainly "are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a) phrases this requirement in terms of common questions, "the capacity of a classwide proceeding

---

[5] The plaintiffs use March 30, 2011, in their proposed class definition as the beginning of the class period. Trans Union challenged this date based on the FCRA's statute of limitations. *See* 15 U.S.C. § 1681p. The plaintiffs concede to using October 3, 2012, for the beginning of the class period—two years prior to the plaintiffs filing the complaint.

to generate common *answers* apt to drive the resolution of the litigation" controls. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (internal quotation omitted). "A single common question will suffice, but it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT Prod. Co.*, 764 F.3d at 360 (quoting *Dukes*, 131 S. Ct. at 2551, 2556). In other words, "[a] point of commonality must be specific—and relevant—enough that it could help form the basis for the success of an individual claim." *Soutter*, 307 F.R.D. at 200.

The common questions in this case include whether Trans Union's process for sending PEER Letters violates § 1681k and whether Trans Union's violation, if any, was willful. Trans Union focuses on the question of whether it provided the consumer report "to the user," as § 1681k also requires. Thus, Trans Union concludes, the common question proffered by the plaintiffs "does not address [this] actual element of the class claim." (Def.'s Resp. 19.) The commonality requirement, however, does not require the common question to answer every element of the class claim; "[a] single common question will suffice." *EQT Prod. Co.*, 764 F.3d at 360. Just because Trans Union focuses on a different element of a § 1681k claim does not mean that other common questions cease to exist. Trans Union's arguments regarding commonality read more like a challenge to predominance, which the Court discusses below. But the plaintiffs have certainly met the commonality requirement.

### C. Typicality

In this case, "the claims or defenses of the [plaintiffs] are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998). In other words,

"plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466–67 (4th Cir. 2006). To analyze typicality, courts should "begin with a review of the elements of plaintiffs' *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it[, ] then determine the extent to which those facts would also prove the claims of the absent class members." *Id.* at 467.

To succeed on their § 1681k claim, the plaintiffs must show that Trans Union (1) furnished a consumer report for employment purposes that contained a matter of public record likely to have an adverse effect upon the consumer's ability to obtain employment, (2) did not notify the consumer "at the time such public record information [was] reported to the user," and (3) violated § 1681k willfully. 15 U.S.C. §§ 1681k, 1681n. The plaintiffs intend to rely on facts related to Trans Union's process for sending PEER Letters to prove their claim. Those same facts would also prove—or disprove—the § 1681k claim of the absent class members, as Trans Union admits to using the same process for sending PEER Letters throughout the class period.

Trans Union challenges typicality by focusing on the term "to the user" in the relevant statutory language. According to Trans Union, "the user" means only the entity taking or intending to take adverse action based on the contents of the potentially incriminating consumer report—usually the potential employer. (*See* Def.'s Resp. 5–6.) So "the user" of Buckley's consumer report was PDRI, and "the user" of Harris's report was either Foresters or BIG, depending on whether the Court considers BIG adding ratings to Harris's report as adverse action. This means that "the user" did not receive Buckley's report until four days after Trans Union mailed the PEER Letter, and that the timing of Harris's PEER Letter remains ambiguous, depending. Thus, Trans Union argues that the plaintiffs' claims do not qualify as typical of each

other, let alone typical of the absent class members. On the other hand, the plaintiffs argue that the term "the user" also includes intermediaries who receive the consumer report on the way to the potential employer, rendering Trans Union's distinction irrelevant. (*See* Pls.' Reply 7–11.)

The Court finds both parties' arguments on "the user" interesting, but thinks it unnecessary to resolve at this stage of the litigation. These arguments dive deep into the merits of the plaintiffs' claim, which the Court can do at a later stage. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, __ U.S. __, 133 S. Ct. 1184, 1195 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."). Trans Union admits to sending PEER Letters without regard to whether or not it provided the consumer report to "the user." (Def.'s Resp. 1.) Trans Union also admits to employing the same process each time it sent a PEER Letter. The plaintiffs challenge that process. Thus, for purposes of the current motion only, the Court assumes without deciding that HireRight and BIG qualify as users of the potentially incriminating consumer reports sent by Trans Union. Consequently, the plaintiffs satisfy the typicality requirement, as Trans Union employed the same process to send PEER Letters to both the plaintiffs and the absent class members.

### D. Adequacy

Turning to adequacy, the plaintiffs must prove that both the representative parties and class counsel will fairly and adequately protect the interests of the class. *Soutter*, 307 F.R.D. at 212 (citing Fed. R. Civ. P. 23(a)(4), (g)(4)). The representative parties here, Buckley and Harris, "possess the same interest and suffer the same injury" as the proposed class members, and "possess undivided loyalties" to them. *Broussard*, 155 F.3d at 338 (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Further, class counsel certainly

8

qualifies as experienced in the arena of class action litigation under the FCRA. Thus, the plaintiffs meet Rule 23's adequacy requirement.

### *E. Predominance*

Next, Trans Union's challenge to the predominance requirement fails because "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). While similar to the commonality inquiry, *see supra* Part II.B, "the predominance criterion is far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). It tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. The test "is qualitative rather than quantitative," *Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010), meaning that it "is not simply a matter of counting common versus noncommon questions and checking the final tally . . . [, but] compares the quality of the common questions to those of the noncommon questions," *Soutter*, 307 F.R.D. at 214 (internal citation omitted). "Common issues of law and fact predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Stillmock*, 385 F. App'x at 273 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S 639 (2008)).

In this case, the question of whether Trans Union's process for sending PEER Letters violates § 1681k predominates over questions affecting only individual members. Trans Union argues that this question "not only does not predominate, it is flatly irrelevant because the answer cannot drive the class-wide resolution of liability in this case. (Def.'s Resp. 27.) The Court disagrees. If Trans Union's process satisfies the "at the time" requirement in § 1681k, and if Trans Union has followed this standardized process as both parties agree that it has, then Trans

9

Union has not violated the FCRA. Granted, if Trans Union's process does not satisfy the "at the time" requirement, the issue of who qualifies as a "user" under the statutory language becomes more important. This possible result, however, does not transform the question of whether Trans Union's process violates § 1681k into one that does not "have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . relief." *Stillmock*, 385 F. App'x at 273 (internal quotation omitted). Accordingly, the Court finds that the plaintiffs have satisfied the predominance requirement.

### *F. Superiority*

Trans Union did not challenge that the plaintiffs' proposed class meets the superiority requirement, and the Court finds "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "In determining whether the class mechanism is truly superior, the court should consider '(1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability.'" *Soutter*, 307 F.R.D. at 217–18 (quoting *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); Fed. R. Civ. P. 23(b)(3)). Phrased more generally, the superiority requirement compares class action litigation to possible alternatives "to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Stillmock*, 385 F. App'x at 274 (internal quotation and citation omitted). In this case, the plaintiffs meet the superiority requirement. The Court does not foresee difficulty managing the class action, and, like many cases brought under the FCRA, "the class members do

not have a strong interest in individually prosecuting the case." *Dreher v. Experian Info. Solutions, Inc.*, No. 3:11-cv-00624-JAG, 2014 WL 2800766, at *5 (E.D. Va. June 19, 2014).

### G. Ascertainability

Finally, to ensure that "the members of [the] proposed class [are] readily identifiable," *EQT Prod. Co.*, 764 F.3d at 358 (internal citation and quotation omitted), the Court limits the class definition. To meet the ascertainability requirement, "[t]he plaintiffs need not be able to identify every class member at the time of certification. But if class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)) (internal quotations and edits omitted).

Trans Union does not challenge ascertainability specifically, but refers to the necessary "mini-trials" to determine whether the recipient of a potentially incriminating consumer report qualifies as a "user" under § 1681k. To limit any such concerns, the Court limits the class to consumers who were the subject of a report furnished by Trans Union to HireRight and BIG only. As discussed above, the Court assumes for the purposes of this motion that HireRight and BIG qualify as users, so neither the Court nor the parties need to engage in "mini-trials" to ascertain the class.

### III. CONCLUSION

For the reasons stated, the Court GRANTS the plaintiffs' motion for class certification, with edits. The Court certifies the following class:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report furnished by Trans Union LLC ("Trans Union") to (1) Business Information Group, Inc., or (2) HireRight, Inc., (b) that was furnished for an employment purpose, (c) that contained at least one record of a

11

civil lien, bankruptcy or civil judgment, (d) on or after October 3, 2012, and (e) to whom Trans Union did not place in the United States mail postage pre-paid, on the day it furnished any part of the report containing the public record, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report. Excluded from the class definition are any employees, officers, directors of Trans Union, any attorney appearing in this case, and any judge assigned to hear this action.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 5/3/16
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

12