**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

TYRONE HENDERSON, et al.,

        Plaintiffs,

v.                                    Civil Action No. 3:14-cv-00679-JAG

TRANS UNION, LLC, et al.,

        Defendants.


**TRANS UNION LLC'S REPLY IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT ON COUNT TWO**
**OF PLAINTIFFS' AMENDED CLASS COMPLAINT**


Michael O'Neil *(admitted pro hac vice)*    Travis A. Sabalewski (VSB No. 47368)
Albert Hartmann *(admitted pro hac vice)*    Alison R. W. Toepp (VSB No. 75564)
Reed Smith LLP    Reed Smith LLP
10 South Wacker Drive, 40th Floor    Riverfront Plaza – West Tower
Chicago, Illinois 60606    901 East Byrd Street, Suite 1700
Telephone:  (312) 207-1000    Richmond, Virginia 23219
Facsimile:  (312) 207-6400    Telephone: (804) 344-3400
michael.oneil@reedsmith.com    Facsimile: (804) 344-3410
ahartmann@reedsmith.com    tsabalewski@reedsmith.com
    atoepp@reedsmith.com

*Counsel for Trans Union LLC and Trans Union Rental Screening Solutions, Inc.*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS ............................................ 2

    A.   Plaintiffs, As They Must, Concede That The Material Facts About Trans
    Union's PEER Letter Process Are Undisputed........................................................ 3

    B.   Plaintiffs Cannot Manufacture Factual Disputes About The Timing Of The
    Beginning Of The PEER Letter Process Without Citing To Specific
    Record Evidence. .................................................................................................. 4

    C.   Plaintiffs' Efforts To Contest Paragraphs 29 And  44 Ignore Trans Union's
    Expert's Undisputed Opinions And Actual Deposition Testimony....................... 5

III. ARGUMENT .......................................................................................................... 6

    A.   Plaintiffs Offer No Persuasive Arguments To Contradict The Conclusion
    That Trans Union's PEER Letter Process Complies With § 1681k(a)(1). ............. 6

        1.   The Case Law Cited By Plaintiffs' Does Not Support, And Even
        Undercuts, Their Arguments........................................................................ 6

        2.   Plaintiffs Misconstrue "At The Time" By Ignoring What The
        FCRA Actually Requires, As Well As The Context Of The Phrase. ....... 10

        3.   Plaintiffs' Inability To Offer A Single Definition Of "At The
        Time," Demonstrates That This Phrase Is Ambiguous As Used In
        § 1681k(a)(1). ......................................................................................... 11

        4.   Plaintiffs' Citations To Other FCRA Provisions Ignore The
        Context And Purposes Of Those Provisions, Which Must Guide
        Interpretation Of How "At The Time" Is Used In Those
        Provisions................................................................................................. 12

        5.   Trans Union's Supposed "Policy" Arguments Are Statutory
        Construction Arguments That § 1681k(A)(1) Should Not Be Read
        To Lead To Absurd Results. ..................................................................... 13

    B.   Trans Union's PEER Letter Process Does Not Constitute A Willful
    Violation Of § 1681k(a)(1). ................................................................................ 15

        1.   All Three Factors In The *Safeco* Safe-Harbor Test Support
        Granting Summary Judgment To Trans Union.......................................... 15

2.      Trans Union's Undisputed Process Exceeds The Requirements Of
        § 1681k(A)(1) And Does Not Constitute A Reckless Disregard For
        The Rights Of Consumers....................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Nat'l Eng'g Serv. Corp.*,
620 F. Supp. 2d 319 (D. Conn. 2009) ....................................................................................9

*Boyd v. CEVA Freight, LLC*,
No. 3:13-cv-00150-JAG, 2013 WL 6207418 (E.D. Va. Nov. 27, 2013) ...........................16, 17

*Cortez v. Trans Union, LLC*,
617 F.3d 688 (3d Cir. 2010) .............................................................................................16, 17

*Costa v. Family Dollar Stores of Virginia, Inc.*,
No. 3:14-CV-00731-JAG, 2016 WL 3919458 (E.D. Va. Jul. 19, 2015) ...........................16, 19

*Dalton v. Capital Associated Industries, Inc.*,
257 F.3d 409 (4th Cir. 2001) .................................................................................................9

*Dreher v. Experian Info. Solutions, Inc.*,
71 F. Supp. 3d 572 (E.D. Va. 2014) ......................................................................................15

*Etterson v. Newcome*,
No. 3:14-CV-650-JAG, 2016 WL 7045724 (E.D. Va. Dec. 2, 2016) .....................................2

*Francis v. Booz, Allen & Hamilton, Inc.*,
452 F.3d 299 (4th Cir. 2006) .................................................................................................2

*Healthkeepers, Inc. v. Richmond Ambulance Auth.*,
642 F.3d 466 (4th Cir. 2011) ...............................................................................................14

*Jafari v. Old Dominion Transit Management Co.*,
913 F. Supp. 2d 217 (E.D. Va. 2012) .....................................................................................2

*Johnson v. Zimmer*,
686 F.3d 224 (4th Cir. 2012) ...............................................................................................12

*Jones v. Sterling Infosystems, Inc.*,
317 F.R.D. 404 (S.D.N.Y. 2016) ..........................................................................................12

*Poore v. Sterling Testing Sys., Inc.*,
410 F. Supp. 2d 557 (E.D. Ky. 2006) .....................................................................................9

*Rodriguez v. Equifax Info. Servs., LLC*,
No. 1:14-CV-01142, AJT/MSN, 2015 WL 4417285 (E.D. Va. July 17, 2015) .............. *passim*

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007) ............................................................................................................ *passim*

*Smith v. E-Backgroundchecks.com, Inc.*,
  81 F. Supp. 3d 1342 (N.D. Ga. 2015) ............................................................... *passim*

*Smith v. HireRight Solutions, Inc.*,
  711 F. Supp. 2d 426 (E.D. Pa. 2010) ...................................................................10

*Williams v. LexisNexis Risk Mgmt. Inc.*,
  No. 3:06cv241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) ............................6, 7

**Statutes**

15 U.S.C. § 1681(b) .................................................................................................14

15 U.S.C. § 1681b .....................................................................................................19

15 U.S.C. § 1681g .....................................................................................................13

15 U.S.C. § 1681k .............................................................................................. *passim*

15 U.S.C. § 1681n .....................................................................................................15

Public Law 104-208, § 2403(b), 110 Stat. 3009-430-431 (Sept. 30, 1996)...................19

**Other Authorities**

16 C.F.R. pt. 600 app. § 613(4) ................................................................................17

40 Years of Experience with the Fair Credit Reporting Act:
  An FTC Staff Report With Summary of Interpretations (July 2011) .....................17

55 Fed. Reg. 18804 (May 4, 1990) ...........................................................................17

H.R. Rep. 102-692, 1992 WL 179676 (1992) ..........................................................19

H.R. Rep. 103-486, 1994 WL 164513 (1994) ..........................................................19

S. Rep. 103-209, 1993 WL 516162 (1993)...............................................................19

S. Rep. 104-185, 1995 WL 747809 (1995)...............................................................19

Defendant Trans Union LLC ("Trans Union"), by counsel, pursuant to Fed. R. Civ. P. 56 and Local Civ. R. 7 and 56, hereby replies in support of its motion for summary judgment on Count Two of Plaintiffs' Amended Complaint (ECF 103), and responds to Plaintiffs' Memorandum in Opposition to the motion (ECF 109 ("Opposition" or "Opp.")).[1]

## I.    INTRODUCTION

As demonstrated by Plaintiff's response to Trans Union's motion for summary judgment, the issue of whether Trans Union's procedures for providing notice to consumers under 15 U.S.C. § 1681k(a)(1) constitutes a willful violation of the statute as a matter of law is ripe for this Court's decision.

By their own admission, virtually all of Trans Union's material facts are undisputed, and Plaintiffs' efforts to dispute a handful of other facts fail for lack of specificity and evidentiary support.   Trans Union's undisputed facts describe a notification process that begins before the corresponding employment-purpose report is delivered.  Trans Union also pointed to decisions in cases where, as here, plaintiffs unsuccessfully argued that the statute requires notice contemporaneous with delivery of the report to the employer; summary judgement was granted to defendants in both cases.  In response to this on-point authority, Plaintiffs point – on page 1 of their opposition brief – to a partial transcript of an oral argument hearing that predated the decisions cited by Trans Union, contending that the remarks of Judge Payne represent an "on the record decision" that, in fact, is contradicted by the court's actual ruling.

Trans Union alternatively established that, irrespective of the true meaning of the language, Trans Union's interpretation is "not objectively unreasonable," in light of the language that at least two (2) courts have described as "ambiguous," and the absence of judicial or

---

[1] Trans Union will use the same abbreviations as in its Memorandum in Support of its Motion for Summary Judgment (ECF 104 ("Memorandum" or "Mem.")).

regulatory authority warning Trans Union away from its interpretation.  Finally, the inclusion of additional content in the letters (not required by the statute) in order to facilitate consumers' dispute of such information (where appropriate), and the undisputed use of "unique" mailing procedures that perform processing and other services normally performed by the USPS in order to expedite delivery of the notices to consumers, precludes any finding that Trans Union acted willfully.

## II.  RESPONSE TO PLAINTIFFS' STATEMENT OF FACTS

As required by Local Civil Rule 56, Trans Union's Memorandum identified "all material facts as to which … there is no genuine issue and cit[ed] the parts of the record relied on to support the listed facts."  L.R. 56.  (Mem. at 4-12.)  Under the same rule, Plaintiffs were required to cite to record evidence to create a genuine dispute as to every fact that they controvert.  L.R. 56.  Plaintiffs readily (and repeatedly) concede that all but four (4) of Trans Union's fifty (50) factual paragraphs are "undisputed."  (Opp. at 2.)

However, when attempting to manufacture the few factual disputes, Plaintiffs fail to offer specific record cites, i.e., evidence, in support of their "facts."  Therefore, under Local Rule 56, this Court should consider all Trans Union's proposed facts as undisputed.  *See Etterson v. Newcome*, No. 3:14-CV-650-JAG, 2016 WL 7045724 at *1 (E.D. Va. Dec. 2, 2016) (party opposing summary judgment must "designate 'specific facts showing that there is a genuine issue for trial'") (internal citations omitted); *Jafari v. Old Dominion Transit Management Co.*, 913 F. Supp. 2d 217, 222 (E.D. Va. 2012) (quoting *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006)) ("'unsupported speculation is not sufficient to defeat a summary judgment motion'").

### A.   Plaintiffs, As They Must, Concede That The Material Facts About Trans Union's PEER Letter Process Are Undisputed.

Plaintiffs – like this Court (ECF 79 at 3) and Trans Union (Mem. at 3-4) – understand that the sole factual focus of this case involves the timing and process by which Trans Union prepares and sends its PEER Letters.  (*See, e.g.*, Opp. at 2 ¶ a.)  To describe this uninterrupted process, from beginning to end, Trans Union submitted declarations of two Trans Union employees, Mark Roethel and Sean Walker (TU Exs. 1, 2), a declaration from Trans Union's mail vendor, SourceHOV (TU Ex. 3), and a declaration and report from Trans Union's unrebutted USPS expert witness, John Manzolillo (TU Ex. 5).  These declarations offer specific facts as to how: Trans Union captures and saves PEER Letter Data to a specific file before Trans Union delivers the corresponding Employment Credit Report; Trans Union batches and delivers that data to SourceHOV each day; and how SourceHOV uses that data to print and mail PEER Letters the same day that the onsite USPS accepts mail.  (UDF 1-30.)  In addition, Mr. Manzolillo's unrebutted opinions demonstrate that SourceHOV's operations ensure swifter delivery of PEER Letters to recipients than alternative mailing methods.  (UDF 39-50.)

In response, Plaintiffs offer neither evidence nor expert testimony.  Instead, Plaintiffs repeat certain of Trans Union's facts (not always accurately),[2] offer their own characterization of facts, and vaguely cite to snippets of deposition testimony and large exhibits (ignoring the portions that undercut their arguments).  Such efforts are unavailing.

---

[2] For example, Plaintiffs claim that by Paragraph 1 "Trans Union agrees that it is required to send the § 1681k(a)(1) notice."  (Opp. at 2.)  However, Paragraph 1 merely states that Trans Union offers a product called an Employment Credit Report, and makes no mention of § 1681k(a)(1) notices.  (UDF 1.)

**B.**    **Plaintiffs Cannot Manufacture Factual Disputes About The Timing Of The Beginning Of The PEER Letter Process Without Citing To Specific Record Evidence.**

While unable to dispute the majority of Trans Union's facts, Plaintiffs claim to contest Paragraph 8 (and purportedly Paragraph 11, although it is never directly addressed).  They disagree with the "characterization" in Paragraph 8 that Trans Union's daily transmission of data files to SourceHOV is "the next step in the process" for notifying consumers via PEER Letters because "that is the *start* of the consumer-specific PEER letter process."  (Opp. at 3 ¶ b (emphasis in original).)  Plaintiffs – without offering any evidence[3] – even go so far as to claim that "[t]here is nothing in the actual record to support" Trans Union's factual description as to when the process begins.  (Opp. at 3 ¶ b.)

Yet, as they must, Plaintiffs leave unchallenged the fact that prior to the delivery of an Employment Credit Report, Trans Union gathers the PEER Letter Data for a letter triggered by that report.  Such data includes the name and address of the subject of the report, the actual public record included on the report, and the recipient of the report.  (UDF 6-7; TU Ex. 2 at 5-6 (sample PEER Letter).)  Nor do Plaintiffs challenge any of the other facts about the steps in the PEER Letter process taken by both Trans Union and SourceHOV that use the specifically-captured data to generate and mail PEER Letters.  Left unrebutted, such facts are fatal to Plaintiffs' claim.  (*See* Mem. at 14-15, 17-20.)

Although not mentioned in Paragraphs 8 or 11, Plaintiffs vaguely dispute that SourceHOV mails PEER Letters on the same day it receives the data from Trans Union (with the exception of Sundays and USPS holidays).  (Opp. at 3 ¶ c.)  Plaintiff's contend that "for a large number of those PEER letters, the SourceHOV records show that the notices were not sent for

---

[3] Plaintiffs did not depose either Mr. Roethel or SourceHOV.  Although Plaintiffs deposed Mr. Walker, as a Trans Union Rule 30(b)(6) designee on the PEER Letter process, they offer no citations to his deposition.

several days," and as the only support point the Court to a 77-page exhibit to the SourceHOV

declaration, without pointing to a particular page or entry.  (Opp. at 3 ¶ c (*citing* ECF 104-3, TU

Ex. 3(A), at 10-87).)  Plaintiffs' general citation to a 77-page spreadsheet to attempt to create a

factual dispute is neither persuasive nor consistent with their obligation to provide specific

record citations.[4] (*See supra* at 2.)

### C.     Plaintiffs' Efforts To Contest Paragraphs 29 And  44 Ignore Trans Union's Expert's Undisputed Opinions And Actual Deposition Testimony.

Plaintiff's dispute Mr. Manzolillo's purported comparison and "characterization" of

certain mailing processes in Paragraph 44.  (Opp. at 3-5 ¶¶ e-h.)  As an initial matter, Plaintiffs

fail to directly address purportedly disputed Paragraph 29, by which Trans Union demonstrated

that the "entire PEER Letter process is designed to ensure faster and more reliable delivery of

PEER Letters."  (UDF 29.)  Plaintiffs never directly challenge that the intended purpose of the

PEER Letter process is achieved.  Plaintiffs' arguments as to Paragraph 44 fail based on the

actual record.  Plaintiffs inaccurately claim that Mr. Manzolillo compared SourceHOV's process

to "a Mom-and-Pop mailing process." (Opp. at 3 ¶ e.)  In fact, Mr. Manzolillo compared

SourceHOV's process to the processes first, proposed by Plaintiff (UDF 46-47; *see also* Mem. at

8-9, ¶¶ 35-36), and second, considered and found sufficient in *Rodriguez v. Equifax Info. Servs.,*

*LLC*, No. 1:14-CV-01142 AJT/MSN, 2015 WL 4417285 (E.D. Va. July 17, 2015), (UDF 48-49).

Plaintiffs' attempts to use Mr. Manzolillo's deposition to manufacture factual disputes

fare no better.  First, Plaintiffs claim that Mr. Manzolillo testified that SourceHOV's "work is

comparable to other modern mailing vendors."  (Opp. at 4 ¶ e.)  However, conspicuously absent

---

[4] In any event, Plaintiffs' claim is wrong.  Out of the 1,341 days within the class period, i.e., October 3, 2012, through June 7, 2016, excluding Sunday and USPS holidays, SourceHOV's records indicate that the "MailDate" for PEER Letters was more than one day after the "FileReceipt" date in only four (4) instances: 11/22/2012; 2/15/2013; 1/31/2014; 2/6/16.  (TU Ex. 3 at 46, 49, 60, 83; *see also* TU Ex. 3 ¶¶ 13, 30 (explaining SourceHOV data).)  Such isolated incidents hardly constitute the "large number" of letters sent "several days" late claimed by Plaintiffs. Further, the SourceHOV data is not limited to letters mailed to class members.  Plaintiffs even concede that their letters were both mailed the day after the reports were issued, i.e., were not delayed.  (Opp. at 3 ¶ d.)

is any refutation of his unequivocal testimony that the procedures used by SourceHOV were

unique, even among modern mail vendors:

> Q.    (By Mr. Bennett)  Okay.  But the Source HOV processes and
>        relationship with the U.S. Postal Service is not an unusual one in
>        this day and age, correct?
>
> A .    No, that's incorrect.
>
>        It's very -- **it's actually unusual and unique**.  It's a very micro-
>        segment of the major mailing population in the United States.
>
>        It gives Source HOV **optimum** mail processing, transportation,
>        distribution and delivery through the U.S. Postal Service network.

(Manzolillo Dep., ECF 109-3, 18:4-14 (emphasis added).)

Similarly, Plaintiffs – implying that Trans Union's PEER Letter process is somehow

deficient – cite Mr. Manzolillo's deposition testimony that a consumer "would not receive his or

her PEER letter until 2 to 3 days after Trans Union delivered the letter to SourceHOV for

processing."  (Opp. at 4-5 ¶¶ g-h.)  However, Plaintiffs ignore that Mr. Manzolillo testified that

this 2-3 day timing is **faster** than would otherwise be expected for First Class mail (not sent by

SourceHOV).  (Manzolillo Dep., ECF 109-3, 17:8-15.)  As with their other attempts to

manufacture fact disputes, Plaintiffs' efforts to dispute the facts and opinions offered by Mr.

Manzolillo fail when the underlying evidence is closely examined.

## III.    ARGUMENT

### A.    Plaintiffs Offer No Persuasive Arguments To Contradict The Conclusion That Trans Union's PEER Letter Process Complies With § 1681k(a)(1).

1.    The Case Law Cited By Plaintiffs' Does Not Support, And Even Undercuts, Their Arguments.

Plaintiffs rely heavily upon *Williams v. LexisNexis Risk Mgmt. Inc*., No. 3:06cv241, 2007

WL 2439463 (E.D. Va. Aug. 23, 2007) – or, more precisely, excerpts from the court hearing

leading to that decision – as legal authority that § 1681k(a)(1) requires mailing of the notice to

consumers on the same day as the report is delivered.  However, absent from the Opposition is any citation to where the *Williams* Court actually reached the claimed holding.  This is unsurprising, as the cited decision only addressed a motion for class certification, *Williams*, 2007 WL 2439463, at *1, not a summary judgment motion that required resolution of the precise meaning of § 1681k(a)(1).  To distract from the lack of the claimed holding in *Williams*, Plaintiffs cite to the transcript of the oral argument on the Rule 23 and Rule 56 motions.  However, the questions and comments of a judge simply do not establish any precedential – or even useful – legal guidance.  In fact, Judge Payne denied summary judgment because of "'genuine disputes of material fact.'"  (Opp. at 10 (quoting ECF 109-1 at 17).)  Judge Payne, therefore, made no ruling as to the meaning of the relevant statute. Indeed, Judge Payne noted it was an open issue.  Notably, Plaintiffs do not attach the complete hearing transcript to the Opposition so that the Court can identify the factual disputes that precluded summary judgment in *Williams*.

Fortunately, Plaintiffs previously provided this Court with the complete transcript.  (ECF 52-1.)  When discussing the "at the time" requirement during the summary judgment portion of the argument, Judge Payne expressly noted that "[w]e don't have any case law" and that "[s]omewhere along the line 'at the time' has to be interpreted."  (ECF 52-1 at 128:23-25.)  However, Judge Payne never reached such an interpretation, due to the presence of material disputed facts.  In any event, almost a decade after *Williams*, there is now case law on the meaning of "at the time," all of which supports Trans Union's arguments.  (*See infra* at 8-10; *see also* Mem. at 17-20.)

Plaintiffs' primary efforts to rely on snippets from an oral argument on a Rule 23 motion demonstrates its inability to refute the on-point decisions in *Smith v. E-Backgroundchecks.com,*

*Inc.*, 81 F. Supp. 3d 1342, 1351-52 (N.D. Ga. 2015), and *Rodriguez*, 2015 WL 4417285. Plaintiffs' efforts to distinguish these rulings fail.

In *Smith* – contrary to Plaintiffs' claim (without citation) that the court found that "if the notice was not in fact filed the day the agency furnished the report, it would have violated § 1681k(a)(1) (Opp. at 12) – the court specifically rejected a reading of the statute that required same-time, i.e., "contemporaneous or simultaneous" notice. *Smith*, 81 F. Supp. 3d at 1362-63 (noting that USPS mail "certainly does not achieve contemporaneous or simultaneous notification"). Further, the *Smith* Court specifically noted that the defendant "has not presented evidence as to the date it actually mailed the letter." *Id.* at 1364 & n.23. However, even under those circumstances – radically different from here, where Trans Union provided undisputed proof of when and how the PEER Letters were mailed – the court granted summary judgment to the defendant as to the claims that it willfully violated § 1681k(a)(1).

Plaintiffs also misstate the facts and holding of *Rodriguez*. Plaintiffs claim that the defendant there obtained summary judgment by proving that its process ensured "*accomplishing the mailing later that same day*." (Opp. at 12 (emphasis in original).) That description of the ruling is simply false. The opinion makes clear that the notices were merely placed in an office outbox for unspecified delivery to an internal mailroom. The court specifically noted that it had "no information" as to when such notices were "actually mailed." *Rodriguez*, 2015 WL 4417285, at *1. Therefore, the court did not and could not rule that same-day mailing was mandated by the statute. Instead, Judge Trenga granted summary judgment to defendant, and found the ambiguous "at the time" requirement did not require "technological symmetry" between delivery of the notice and delivery of the report, and that a notice process (like that here) that is initiated at the time the report was delivered complied with the statute. *Id.*

Plaintiff claims, without citation, that Trans Union's PEER Letter process is "on its face less efficient and timely that the Equifax process detailed in *Rodriguez*." (Opp. at 16.) However, this claim ignores the undisputed opinions of Trans Union's expert, Mr. Manzolillo, who explicitly detailed how Trans Union's process (involving a mail vendor with a dedicated USPS facility and transportation and delivery coordinated with the USPS) was superior to the *Rodriguez* process (manually printing letters and then placing then in an office outbox for pickup and mailing by unspecified methods at an unspecified time). (*See supra* at 5-6; UDF 48-49.) Further, Judge Trenga nevertheless granted summary judgment to the defendant, and rejected many of the same arguments advanced by Plaintiffs here.

The other decisions cited by Plaintiffs are irrelevant, as none of them addressed the issue here, i.e., the meaning of the statutory mandate to "notify" consumers "at the time" reports are furnished. One decision cited by Plaintiffs involved a CRA that admittedly never sent § 1681k(a)(1) notices. *See Dalton v. Capital Associated Industries, Inc*., 257 F.3d 409, 414 (4th Cir. 2001) (defendant "concedes that it did not notify Dalton at the time it reported his criminal history information"). Therefore, the timing issue was not raised. Other decisions involved CRAs who allegedly only provided notice after the applicant had separately received notice from their potential employer (or as part of such notice), and then contacted the CRA to dispute alleged inaccuracies in the report. *See Adams v. Nat'l Eng'g Serv. Corp*., 620 F. Supp. 2d 319, 331 (D. Conn. 2009) (CRA only notified consumers after receiving dispute, and "nothing in the record which suggests" CRA would have notified consumers absent such dispute); *Poore v. Sterling Testing Sys., Inc.*, 410 F. Supp. 2d 557, 571-72 (E.D. Ky. 2006) (rejecting claim that pre-adverse action notice from employer could also serve as CRA's § 1681k(a)(1) notice). (*See also infra* at 18-19 (discussing interplay of § 1681k(a)(1) and § 1681b(b)(3) pre-adverse action

notices).))  These rulings, therefore, simply did not address the same-day theory urged by

Plaintiffs here.  The only other decisions cited by Plaintiffs denied a motion to dismiss a § 1681k

claim, even though the complaint was "somewhat vague" about the timing of the notice, without

holding what § 1681k(a)(1) actually required.  *Smith v. HireRight Solutions, Inc.*, 711 F. Supp.

2d 426, 438-39 (E.D. Pa. 2010).  In short, none of these decisions – unlike *Smith* and *Rodriguez*

– examined the factual details of a § 1681k(a)(1) notice process, or ruled on the sufficiency of

such a process on summary judgment.

2.      Plaintiffs Misconstrue "At The Time" By Ignoring What The FCRA
        Actually Requires, As Well As The Context Of The Phrase.

Throughout their Opposition, Plaintiffs argue that § 1681k(a)(1) requires Trans Union to

"send," or mail, notices to consumers at a particular time.  (*See, e.g.*, Opp. at 2 ¶ a, 6; *see also*

ECF 79 at 11-12 (class defined by when Trans Union places notice in the mail).)  All of

Plaintiffs' arguments about the meaning of "at the time" then flow from that contention.

However, the FCRA does not impose the requirements assumed by Plaintiff.  Instead,

§ 1681k(a)(1) states that Trans Union must "notify the consumer" (i.e., statute specifies an "end"

and not the "means"), and do so "at the time" it reports adverse public records for employment

purposes.  15 U.S.C. § 1681k(a)(1).

By its Memorandum, Trans Union examined the "at the time" language in the larger

context of § 1681k(a)(1), i.e., in harmony with the statutory language "notify the consumer."

(Mem. at 14-16.)  The FCRA does not mandate when the consumer must receive the required

notice.  Nor does the FCRA contain an express mandate that the notice by mailed (or sent)

contemporaneously with the report.  Therefore, as the *Rodriguez* court recognized, there was no

violation when the CRA's "system initiated, at the same time a report to [the CRA's customer]

was initiated, a process that was designed to deliver notice to the consumer according to a

reasonable, standard and accepted method of delivery."  *Rodriguez, 2015 WL 4417285, at *4.*
On this basis, the court held that the CRA's process and timing for delivering notices was
"consistent with a reasonable interpretation of that requirement."  *Id.*

> 3.      Plaintiffs' Inability To Offer A Single Definition Of "At The Time,"
> Demonstrates That This Phrase Is Ambiguous As Used In § 1681k(a)(1).

Plaintiffs argue that the "language at issue – 'at the time' – is pellucid" (Opp. at 6), and
that it unequivocally requires Trans Union to mail notices to consumers on "the same day" that it
delivers the related report to the employer (or, here, the reseller).  However, by their Opposition,
Plaintiffs offer numerous definitions of this supposedly pellucid phrase that contradict their own
interpretation, including: "on or just before, if not simultaneously with the related event" (Opp.
at 6); "'at the same time'" (Opp. at 6); "'at a particular moment or period in the past'" (Opp. at
6); "the exact moment for or before" (Opp. at 7); "contemporaneous," "contemporaneously" or
"contemporaneous transmission" (Opp. at 7, 11, 19); "a static moment in time" (Opp. at 9); and
"instantaneous" (Opp. at 20).  Moreover, none of these interpretations support Plaintiffs' urged
"same-day" timing requirement.

Further, the dictionary and thesaurus definitions cited by Plaintiffs similarly fail to point
to a single meaning of the "at the time" phrase, and similarly undercut Plaintiffs' "same day"
interpretation.  (Opp. at 6.)  The online thesaurus cited by Plaintiff offers over twenty (20)
synonyms for "at the time," including: "during"; "concurrently with an activity"; "in the course
of"; "in the middle of"; "as"; "when"; and "while."[5]  Notably, that same thesaurus displays only
"Common" synonyms, and does not include "at the same time as" under that category.[6]  Nor do
Plaintiffs' dictionary definitions support their arguments.  One dictionary cited by Plaintiff, in

---

[5] http://www.thesaurus.com/browse/at%20the%20time?s=t (last visited Jan. 27, 2017).

[6] *Id.*

fact, does not define the phrase "at the time."[7]  Another source offered by Plaintiffs has separate entries for "at the time" and "at the same time,"[8] with different definitions for those different phrases.[9]  These multiple, varying definitions demonstrate that the phrase "at the time" is ambiguous and, in any event, do not support Plaintiffs' urged construction.  *See Johnson v. Zimmer*, 686 F.3d 224, 232-33 (4th Cir. 2012) (no "common and ordinary" definition when "term has multiple definitions of varying scope and consequence").[10]

Overall, Plaintiffs' inability to demonstrate a single definition for "at the time" demonstrates that "at the time" is – as *Rodriguez* and *Smith* both held (*see* Mem. at 18-20) – ambiguous as used in § 1681k(a)(1).

> 4. Plaintiffs' Citations To Other FCRA Provisions Ignore The Context And Purposes Of Those Provisions, Which Must Guide Interpretation Of How "At The Time" Is Used In Those Provisions.

Plaintiffs' citations to other provisions of the FCRA that also use the phrase "at the time" are similarly unavailing.  For example, § 1681k(a)(2) "requires a CRA to report the current public record status of an item" of public record reported for employment purposes.  *Jones v. Sterling Infosystems, Inc.*, 317 F.R.D. 404, 410 (S.D.N.Y. 2016).  Therefore, with this important clarifying statutory language, interpreting "at the time" to mean the current, or contemporaneous, public-record status makes sense there, i.e., "to report current (as opposed to outdated) records."  *Id.* at 410.

---

[7] http://www.oxfordlearnersdictionaries.com/us/definition/english/time_1?q=time (last visited Jan. 27, 2017).

[8] http://www.ldoceonline.com/search/?q=at+the+time (last visited Jan. 27, 2017).

[9] Compare http://www.ldoceonline.com/dictionary/at-the-time with http://www.ldoceonline.com/dictionary/at-the-same-time (last visited Jan. 27, 2017).

[10] Plaintiffs' citation to search results with excerpts from 205 cases is no more illuminating.  (Opp. at 6 n.3.) Plaintiffs do not identify which, or how many, of the 205 cases were "reviewed by counsel," a notable omission as not all of the case excerpts in the search results use the phrase "at the time."  (*See, e.g.*, entries 52, 68 ("at **different** times"); 133, 145, 167, 201, 205 ("at **no** time") (emphasis added).)

This same logic does not apply to other provisions.  For example, Plaintiffs cite to § 1681g(a)(1) (Opp. at 7), which requires the disclosure of certain information contained in a consumer's "file at the time of the request."  Plaintiffs claim this means "the exact moment for or before" the request.  (Opp. at 7.)  That contention makes no sense.  As with the triggering event for disclosure under the provision at issue here, a CRA can only act after it receives the request, not "at the exact moment … or before" the consumer makes the request.  Moreover, just as the process used to generate and mail the notices here, the steps necessary to make the disclosure under § 1681g(a)(1) is a process, not a single event.[11]

> 5. Trans Union's Supposed "Policy" Arguments Are Statutory Construction Arguments That § 1681k(A)(1) Should Not Be Read To Lead To Absurd Results.

Plaintiffs devote a significant portion of the Opposition to the contention that Trans Union made "policy" arguments in support of its proposed interpretation of § 1681k(a)(1).  (Opp. at 13-18.)  However, this attempt to minimize the relevance of Trans Union's arguments fails.  Trans Union did not make any "policy" arguments.  The argument that Plaintiffs seek to avoid is, in fact, a statutory-construction proposition that § 1681k(a)(1) should not be interpreted to lead to absurd results.  Trans Union then explained how Plaintiffs' interpretation of the statute would lead to such absurd results.  (Mem. at 20-21.)

As noted above (*see supra* at 10-11), Plaintiffs proposed interpretation that § 1681k(a)(1) requires same-day mailing of PEER Letters has no foundation in the statutory text.  Plaintiffs' attempts to justify this interpretation further highlight why it must be rejected.  By insisting that this Court read § 1681k(a)(1) as imposing a same-day-mailing requirement, Plaintiffs also ask

---

[11] Plaintiffs provide string citations to numerous other FCRA provisions.  (Opp. at 7-9.)  However, without any explanation of the context of purpose of those provisions, such citations are irrelevant.  Further, none of these other provisions support Plaintiff's view that Congress mandated that § 1681k(a)(1) notices be mailed "simultaneously" with delivery of the report to the employer.

this Court to read into the statute significant limitations on when Trans Union can deliver an employment-purpose report that might trigger a § 1681k(a)(1) notice.  For example, Plaintiffs insist that Trans Union cannot report public record information for employment purposes on any day when the USPS will not accept mail (e.g., Sundays and USPS holidays).  Going further, Plaintiffs contend that even on days the USPS is operating, Trans Union can only report such information for a portion of the day, i.e., when it has enough time to prepare and mail a PEER Letter during the hours that the USPS accepts mail.  (UDF 35-37; Mem. at 20-21.)  Such restrictions on when Trans Union can report information – as opposed to when it must provide "notice," i.e., "at the time" – are wholly absent from the text of the FCRA.  Nor do (or can) Plaintiffs point to any legislative history demonstrating that Congress intended the ambiguous phrase "at the time" to impose such reporting restrictions.

Plaintiffs' contentions ignore that both Trans Union and potential employers operate not only on a national basis, but 24 hours a day, 7 days a week and 365 days a year.  The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures **for meeting the needs of commerce**."  15 U.S.C. § 1681(b) (emphasis added); *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) ("Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system ….").  If Plaintiffs' interpretation of § 1681k(a)(1) were correct, employers could not access information needed to make hiring decisions during significant windows of time, i.e., on Sundays or USPS holidays, later in the day on weekdays, and even earlier on Saturdays.  Nothing in the language or legislative history of the FCRA suggests that § 1681k(a)(1) was intended to have such a severe impact on a credit bureau's reporting practices, or negative impact on national hiring practices. *See, e.g. Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 474 (4th Cir. 2011)

(courts have "an obligation to construe statutes as being reasonable" and to avoid absurd results) (internal citations omitted).

**B.     Trans Union's PEER Letter Process Does Not Constitute A Willful Violation Of § 1681k(a)(1).**

1.     All Three Factors In The *Safeco* Safe-Harbor Test Support Granting Summary Judgment To Trans Union.

Plaintiffs concede that recovery under § 1681n(a) – the only provision under which Plaintiffs seek relief – requires proof that Trans Union "willfully" violated the FCRA.  (Opp. at 18.)

As an initial matter, Plaintiffs cite to this Court several outdated pre-*Safeco* decisions and other decisions for the proposition that this Court cannot consider willfulness on a Rule 56 Motion.  (Opp. at 18.)  Of course, Plaintiffs do not try to reconcile their outdated position with the *Fuges* court's interpretation of *Safeco*, as adopted in this Court's decisions in *Dreher* and *Costa*.  (*See* Mem. at 23-24.)

Nonetheless, Plaintiffs acknowledge that whether a violation is willful or instead objectively reasonable requires consideration of three factors (Opp. at 19), which this Court has held must be "taken together … [to] illuminate whether the company conducted itself in an objectively reasonable manner, thus finding its way into *Safeco's* safe harbor."  *Dreher v. Experian Info. Solutions, Inc.*, 71 F. Supp. 3d 572, 579 (E.D. Va. 2014).  As discussed below, Plaintiffs generally fail to respond to Trans Union's arguments and, as discussed above, there are no facts in dispute.

Plaintiffs simply fail to adequately address Trans Union's arguments on the first two *Fuges* factors, i.e., whether the statutory language is pellucid and whether Trans Union's interpretation has a foundation in the statutory text.  As Trans Union explained, the Third Circuit in *Fuges* held that the ambiguity of the FCRA provision there at issue was dispositive in

- 15 -

assessing the first factor.  Trans Union identified two district court decisions that held that the "at the time" requirement in § 1681k(a)(1) is ambiguous.  (Mem. at 24-25 (*citing Rodriguez*, 2015 WL 4417285, at *4 ("requirement that [a CRA] provide notice 'at the time' that it delivers the consumer report to [the purchaser] is ambiguous, that is, there is more than one reasonable interpretation of what that requirement means…"); *Smith*, 81 F. Supp. 3d at 1363 (referring to the "ambiguous requirement to provide notice to the consumer 'at the time' public record information is reported to a user of such consumer report for employment purposes…")).)[12] Plaintiffs never address the holdings in these cases that "at the time" in § 1681k(a)(1) is ambiguous, and inexplicably contends that *Rodriguez* and *Smith* support their positions.  (Opp. at 12, 16, 21.)

The third *Safeco* safe-harbor factor, as this Court has explained, "asks whether the defendant was interpreting the statute in the absence of any contrary authority on the meaning of the statutory language in question because no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the [Federal Trade Commission ('FTC')]."  *Costa v. Family Dollar Stores of Virginia, Inc.*, No. 3:14-CV-00731-JAG, 2016 WL 3919458, at *4 (E.D. Va. Jul. 19, 2015) (quoting *Dreher*, 71 F. Supp. 3d at 579) (internal citations and quotation marks omitted).  Plaintiffs admit, as they must, that there are no court of appeals decisions interpreting the operative provision in § 1681k(a)(1).  Instead Plaintiffs persist in their reliance on the district court decisions which, contrary to their contentions, do not support Plaintiffs' position.  (*See supra* at 6-10.)

Plaintiffs reliance on decisions in *Boyd v. CEVA Freight, LLC*, No. 3:13-cv-00150-JAG, 2013 WL 6207418 (E.D. Va. Nov. 27, 2013), and *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d

---

[12] The varying interpretations of the statutory language, as well as those offered by Plaintiff's dictionary definitions (see *supra* at 11-13) further belie any argument that the phrase is pellucid.

Cir. 2010), is also misplaced.  In *Boyd* this Court merely held that lack of court of appeals authority is not dispositive where the statutory language is clear, i.e., "[w]hen … a statute presents a clear cognizable command."  *Boyd*, 2013 WL 6207418, at \*7.  Similarly, in *Cortez*, the Third Circuit declined to find a defense to willfulness based on the lack of prior court of appeals decisions because the "statute is far too clear."  *Cortez*, 617 F.3d at 722.  Here a different, and much murkier, provision of the FCRA is under consideration, i.e., a provision that two district courts have found to be ambiguous.  *Rodriguez*, 2015 WL 4417285, at \*4; *Smith*, 81 F. Supp. 3d at 1363.  Given the established ambiguity, the absence of court of appeals decisions remains relevant.

Regarding regulatory guidance, the FTC has long approved the use of USPS mail to deliver notices required under § 1681k(a)(1).  55 Fed. Reg. 18804 (May 4, 1990); 16 C.F.R. pt. 600 app. § 613(4) (in "Method of Providing Notice," stating that a "consumer reporting agency may use first class mail to provide the notice").  Plaintiffs observe that this guidance was withdrawn, but fail to acknowledge that the guidance was simultaneously reiterated – a point made in Trans Union's opening brief.  (Mem. at 17.)  In "40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report With Summary of Interpretations (July 2011) (hereafter "FTC 40 Years"), the FTC staff again explained that a CRA "may use first class mail or other reasonable means" to notify consumers under Section 1681k.  FTC 40 Years at 81.  More relevant, there has never been any regulatory guidance on the meaning of "at the time" in § 1681k(a)(1), or even an inkling that CRAs must mail the notice on the same day that a report is provided.  (*See* Mem. at 27.)  Plaintiffs' opposition does not contend otherwise.  Accordingly, Trans Union had no judicial or regulatory guidance that the process could violate § 1681k(a)(1).

Thus, taken together (and also individually) the three factors in the *Safeco* safe-harbor test favor granting summary judgment to Trans Union.

> 2. Trans Union's Undisputed Process Exceeds The Requirements Of § 1681k(A)(1) And Does Not Constitute A Reckless Disregard For The Rights Of Consumers.

Trans Union further explained that the PEER Letter process cannot constitute a reckless disregard of the requirements in § 1681k(a)(1), because there is no basis for a finding that Trans Union's conduct, "creates a high risk of harm, objectively assessed." (Mem. at 28-30 (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007)).) In support, Trans Union cataloged the many ways in which its process voluntarily, i.e., without a statutory mandate, exceeds the requirements of § 1681k(a)(1), even as Plaintiffs interpret it, so as to provide the most useful notice in the most expedient manner. (Mem. at 29.) Plaintiffs do not dispute that Trans Union voluntarily provides (a) a notice that includes the particular public record information that it reported and (b) the contact information for the Consumer Relations Department at Trans Union. (*See* TU Ex. 2 at 506.) Trans Union thereby equips the consumer not just with a notice that unspecified public record information was reported, but identifies specifically what information was reported and how the consumer can dispute it, though neither is required under § 1681k(a)(1).

Moreover, under FTC guidance, use of USPS is permitted, but the "optimum" services that Trans Union uses, through SourceHOV, are not required. (Mem. at 29-30; *see also supra* at 3-5.) However, Trans Union voluntarily uses procedures that, Trans Union's USPS expert has opined, are "unusual and unique" among large mailers, and ensure expedited delivery to consumers, as compared to other First Class mail efforts. (UDF 39-49; *see also supra* at 5-6.)

Instead, Plaintiffs claim for the first time in their Opposition that Trans Union's process harms consumers by depriving them of the ability to address inaccurate and adverse information

before employers use such information to make hiring decisions. (Opp. at 16.) This new claimed harm contradicts Plaintiffs' prior contention that when (or even whether) a PEER Letter is received by a consumer is irrelevant. (UDF 38.) Plaintiffs also ignore that Congress provided a specific remedy for the potential harm now belatedly identified by Plaintiffs. Notably, Congress did not address this harm by amending § 1681k(a)(1), or imposing additional duties on CRAs like Trans Union.

Instead, Congress amended the FCRA in 1996 to include 15 U.S.C. § 1681b(b)(3), which imposes specific notice duties on employers before taking action based on a consumer report. Public Law 104-208, § 2403(b), 110 Stat. 3009-430-431 (Sept. 30, 1996).[13] Under § 1681b(b)(3), an employer who intends to make an adverse hiring decision based on any information in a consumer report – not just the public records discussed in § 1681k(a)(1) – must first provide the applicant/employee with a copy of the report and a summary of the consumer's rights to dispute the information in the report. 15 U.S.C. § 1681b(b)(3). This required "notice to the consumer before the employer actually takes such adverse action … simply slows down the process to allow consumers to dispute or discuss potentially harmful information." *Costa*, 2016 WL 3919458, at *3. Therefore, Plaintiffs' new contention fails to demonstrate that Trans Union's PEER Letter process recklessly disregards the rights of consumers.

Finally, Trans Union's mail vendor, SourceHOV, provides the best available commercial mailing methods to assure the highest levels of deliverability and fastest available delivery times. (UDF 5-30.) As a result, PEER Letters are delivered days sooner than letters mailed by other

---

[13] The Senate and House Committees on Banking, Housing and Urban Affairs both stated in the legislative history that the new notice requirement was intended to require **employers** – not CRA's – to provide consumers a reasonable opportunity to dispute any information in the report before any adverse action based on information in the report. *See* S. Rep. 104-185 at 33, 1995 WL 747809 (1995); see also S. Rep. 103-209 at 13, 1993 WL 516162 (1993); H.R. Rep. 103-486 at 40, 1994 WL 164513 (1994); see also H.R. Rep. 102-692 at 34, 1992 WL 179676 (1992).

USPS methods, including the one proposed by Plaintiff.  (UDF 39-50; *see also supra* at 5-6.)

Nowhere in the Opposition do Plaintiffs meaningfully challenge the facts of Trans Union's

optimized process, coordinated with the on-site USPS employees, or the facts that the PEER

Letter process achieves best-in-business USPS deliverability and speed of delivery.  Nor do

Plaintiffs explain how Trans Union could be found to have recklessly disregarded the rights of

consumers by such a process.

   Therefore, for all the reasons set forth above and by Trans Union's original supporting

memorandum, Trans Union respectfully requests that this Court grant summary judgment to

Trans Union on Plaintiffs' Count Two claim for violation of § 1681k(a)(1), and grant such other

and further appropriate relief.

Dated: January 31, 2017      Respectfully submitted,

                **TRANS UNION LLC**

          By:  /s/ *Travis A. Sabalewski*    

Michael O'Neil *(admitted pro hac vice)*  Travis A. Sabalewski (VSB No. 47368)
Albert Hartmann *(admitted pro hac vice)*  Alison R. W. Toepp (VSB No. 75564)
Reed Smith LLP        Reed Smith LLP
10 South Wacker Drive, 40th Floor   Riverfront Plaza – West Tower
Chicago, Illinois 60606      901 East Byrd Street, Suite 1700
Telephone:  (312) 207-1000     Richmond, Virginia 23219
Facsimile:  (312) 207-6400     Telephone: (804) 344-3400
michael.oneil@reedsmith.com    Facsimile: (804) 344-3410
ahartmann@reedsmith.com     tsabalewski@reedsmith.com
               atoepp@reedsmith.com

  *Counsel for Trans Union LLC and Trans Union Rental Screening Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st of January, 2017, I have electronically filed the foregoing using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record as follows:

Matthew J. Erausquin
Casey S. Nash
Consumer Litigation Associates PC
1800 Diagonal Road, Suite 600
Alexandria, Virginia 22314
matt@clalegal.com
casey@clalegal.com

Leonard A. Bennett
Susan M. Rotkis
Elizabeth Hanes
Consumer Litigation Associates, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
lenbennett@clalegal.com
srotkis@clalegal.com
elizabeth@clalegal.com

Dale W. Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb Street
Petersburg, Virginia 23803
dale@pittmanlawoffice.com

John C. Bazaz
Law Office of John C. Bazaz, PLC
4000 Legato Road, Suite 1100
Fairfax, Virginia 22033
jbazaz@bazazlaw.com

James A. Francis
David A. Searles
Lauren KW Brennan
Francis & Mailman, P.C.
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
jfrancis@consumerlawfirm.com
dsearles@consumerlawfirm.com
lbrennan@consumerlawfirm.com

*Counsel for Plaintiffs*

By:  _/s/ Travis A. Sabalewski_
      Travis A. Sabalewski (VSB No. 47368)
      Reed Smith LLP
      Riverfront Plaza – West Tower
      901 East Byrd Street, Suite 1700
      Richmond, Virginia 23219
      Telephone: (804) 344-3400
      Facsimile: (804) 344-3410
      tsabalewski@reedsmith.com
      *Counsel for Trans Union LLC and*
      *Trans Union Rental Screening*
      *Solutions, Inc.*