## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

TYRONE HENDERSON,
JOSEPH L. BUCKLEY,
and JONATHAN HARRIS,
*on behalf of themselves and all others*
*similarly situated,*
                    Plaintiffs,

v.                                                    Civil Action No. 3:14-cv-00679-JAG

TRANS UNION, LLC,
and TRANS UNION RENTAL
SCREENING SOLUTIONS, INC.,
                    Defendants.

### OPINION

As part of its business, Trans Union LLC ("Trans Union") furnishes consumer reports for employment purposes. The Fair Credit Reporting Act (the "FCRA") requires consumer reporting agencies like Trans Union to follow certain procedures when it furnishes such reports if the reports contain public record information about the subject consumers, such as criminal convictions. 15 U.S.C. § 1681k. Trans Union satisfies this requirement by sending notices—nicknamed "PEER Letters"— to the affected consumers. In this case, Trans Union furnished consumer reports for employment purposes about the class members. The plaintiffs, on behalf of the class, challenge the process Trans Union follows for sending PEER Letters, saying that the process willfully violates § 1681k of the FCRA. Trans Union has moved for summary judgment. Because Trans Union's process for sending PEER Letters is not an objectively unreasonable interpretation of the statutory text, Trans Union did not willfully violate § 1681k. Accordingly, the Court will grant summary judgment to Trans Union on the plaintiffs' class claim.

# I. BACKGROUND

Trans Union is a consumer reporting agency (a "CRA") subject to the FCRA. One of its available products is a consumer report for employment purposes, called an Employment Credit Report. When a customer requests an Employment Credit Report on a specific consumer, Trans Union searches its database and locates its file on that consumer. Trans Union then reports certain information from the file on the Employment Credit Report. If the Employment Credit Report will include public record information, then Trans Union will send a notice to the consumer. As a step in the process of preparing the Employment Credit Report, Trans Union flags the file to indicate that Trans Union needs to send the consumer a PEER Letter.[1]

Every day, sometime after midnight, Trans Union extracts the information needed to generate a PEER Letter for each file flagged the prior day (the "PEER Letter Data"), and electronically sends the data to its vendor, SourceHOV. Every day, except for Sundays and federal holidays, SourceHOV uses the information to prepare, print, and mail PEER Letters to consumers using the template provided by Trans Union.[2] For PEER Letter Data received on

---

[1] At the motion hearing held on March 3, 2017, the plaintiffs challenged when Trans Union actually starts this process, saying that a manager in Trans Union's Contact Center Services, Tran Union's corporate designee, said in his deposition that the mechanical process of sending PEER Letters starts when Trans Union creates a batch file sometime after midnight, not at the time Trans Union generates the Employment Credit Reports. As an initial matter, the plaintiffs did not object to the paragraph of Trans Union's list of undisputed facts, which said: "If any public record will be included on an Employment Credit Report, then as a step in the process **prior** to delivering the report, Trans Union captures and saves certain information into an online file . . . ." (Def.'s Mem. Supp. Mot. Summ. J. 5, at ¶ 6 (emphasis in original); *see* Pls.' Mem. Opp'n 2–3.) A declaration from a director in Trans Union's Data and Technology Engineering Department, presumably the department responsible for programming the process, supported this paragraph. Local Civil Rule 56 permits the Court to assume facts in the moving party's list as admitted unless the non-moving party challenges it. Regardless, this dispute is not material to the Court's holding that Trans Union's interpretation of 1681k(a)(1) was not objectively unreasonable.

[2] Trans Union has used the same template throughout the relevant class period. The PEER Letter template includes the name and address of the company who requested the Employment Credit

Sundays and federal holidays, SourceHOV prepares, prints, and mails the PEER Letters the next business day. SourceHOV coordinates with the United States Postal Service to expedite the mailing process.

Two plaintiffs—Joseph L. Buckley and Jonathan Harris—brought a class claim against Trans Union for violating § 1681k of the FCRA based on its process for sending PEER Letters.[3] For the relevant class period, this process has remained the same. On May 3, 2016, the Court certified a class. Trans Union has now moved for summary judgment on this class claim.

## II. DISCUSSION[4]

The plaintiffs allege a class claim against Trans Union for willfully violating § 1681k of the FCRA. Trans Union moves for summary judgment, arguing that it did not violate § 1681k and that, even if it did, the violation was not willful. Because the plaintiffs only seek statutory and punitive damages, they must prove willfulness to ultimately succeed on their claim. *See* 15 U.S.C. § 1681n.

Willful violations of the FCRA include not only knowing and intentional violations, but also reckless violations. *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). A company recklessly violates the FCRA when its interpretation of the language is "objectively unreasonable," raising

---

Report, the fact that the report will include public record information, the public record information itself, and the contact information for Trans Union.

[3] The amended complaint also includes an additional plaintiff, Tyrone Henderson, and an additional defendant, Trans Union Rental Screening Solutions, Inc., both involved in two individual claims. These parties and the individual claims are not at issue in the current motion.

[4] Trans Union moves for summary judgment on Count II of the amended complaint. Rule 56 of the Federal Rules of Civil Procedure directs the court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S 317, 322 (1986).

an "unjustifiably high risk" of a statutory violation. *Id.* at 69–70. To determine whether the company acted reasonably, courts should consider the clarity of the statutory text itself, as well as any guidance from authoritative sources interpreting the statutory text, such as courts of appeals, the Federal Trade Commission (the "FTC"), or the Consumer Financial Protection Bureau (the "CFPB"). *Dreher v. Experian Info. Solutions, Inc.*, 71 F. Supp. 3d 572, 579 (E.D. Va. 2014). Without the help of clear text or authoritative guidance, courts then evaluate whether the company's interpretation of the statutory text has a foundation in the text and a "sufficiently convincing justification." *Id.*; *see Burr*, 551 U.S. at 69–70. If so, the company did not act objectively unreasonably, even if it interpreted the statute wrongly. *Id.*

The plaintiffs in this case allege a willful violation of § 1681k, a section that focuses on consumer reports in the employment context. Specifically, a CRA must take one of two possible precautionary measures if it furnishes a consumer report for employment purposes that contains potentially adverse public record information about the consumer, such as a criminal conviction or an outstanding tax lien. Relevant in this case, a CRA can satisfy its obligation by "notify[ing] the consumer of the fact that public record information is being reported by the consumer reporting agency" "at the time such public record information is reported to the user of such consumer report." 15 U.S.C. § 1681k(a)(1).

The parties narrow the issue in this case to the mechanics of a § 1681k(a)(1) notice, focusing specifically on when a CRA must send the notice to the consumer in relation to when it sends the report to the user, and on when the Court should consider the notice and the report actually sent. The statutory text does not provide clear guidance on these mechanics. Neither

has any court of appeals reached this specific issue.[5]  The FTC has provided the guidance that CRAs may use first class mail to provide the required notice,[6] but does not go into any further detail.  Accordingly, the Court turns to whether Trans Union's interpretation of § 1681k(a)(1) has a foundation in the statutory text.

The process that Trans Union set up to generate and send PEER Letters is an objectively reasonable interpretation of § 1681k(a)(1).  The undisputed facts show, and the plaintiffs concede, that the content of the PEER Letter complies with the statutory requirements.  The undisputed facts also show that once Trans Union receives a request for an Employment Credit Report, it searches its database for information on the specific consumer.  If the information retrieved includes public record information, Trans Union captures the information needed to send a PEER Letter, beginning the process of notifying the consumer.  In other words, Trans

---

[5] While no courts of appeals have reached this issue, the plaintiffs cite multiple district court cases in support of their position.  Two of these cases actually grant summary judgment to the CRA on claims of willful violations of § 1681k. *See infra* note 7.  Two present at different procedural postures, unhelpful at the summary judgment stage. *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426 (E.D. Pa. 2010) (denying a motion to dismiss); *Williams v. LexisNexis Risk Mgmt. Inc.*, No. 3:06cv241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) (granting a motion for class certification).  The other two explicitly did not need to reach the parties' timing arguments, so do not provide analysis on the issue. *Adams v. Nat'l Engineering Serv. Corp.*, 620 F. Supp. 2d 319, 331 (D. Conn. 2009) (denying summary judgment to the CRA where the CRA notified the consumer only after the consumer happened to call to discuss her application); *Poore v. Sterling Testing Sys., Inc.* 410 F. Supp. 2d 557, 572 (E.D. Ky. 2006) (denying summary judgment to the CRA where the CRA did not send notice at all).

[6] The FTC originally held the role of interpreting and enforcing the FCRA.  In 1990, the FTC issued commentary on § 1681k.  55 Fed. Reg. 18804, 1990 WL 342991 (May 4, 1990).  Under the heading "Method of Providing Notice," the commentary stated, in full, "A consumer reporting agency may use first class mail to provide the notice required by [§ 1681k(a)(1)]." *Id.* In 2010, Congress shifted the role of interpreting the FCRA from the FTC to the CFPB. FED. TRADE COMM'N, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT: AN FTC STAFF REPORT WITH SUMMARY OF INTERPRETATIONS 1–2 (2011), *available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.    As part of the transition, the FTC withdrew its commentary, but issued a staff summary of its interpretations. *Id.* at 2, 8.  This summary reiterated the commentary as it related to § 1681k verbatim. *Id.* at 81–82.  As far as the Court knows, the CFPB has not issued any guidance on § 1681k.

Union starts the process of notifying the consumer pursuant to § 1681k *at the time* it realizes that the Employment Credit Report will include public record information. This interpretation (i.e., starting the mailing process at the time it realizes that the FCRA may require notice) has a clear foundation in the statutory text. The interpretation also has a sufficiently convincing justification, especially in light of FTC guidance that permits mailing the required notice to consumers. Thus, Trans Union's interpretation of § 1681k is not objectively unreasonable.[7] Consequently, even if Trans Union violated § 1681k, it did not recklessly violate the statute. Without a reckless violation, the plaintiffs' claim fails because they cannot prove willfulness.

## III. CONCLUSION

For the reasons stated, Trans Union did not willfully violate § 1681k through its process of sending PEER Letters to the plaintiffs. Accordingly, the Court GRANTS Trans Union's motion for summary judgment.

The plaintiffs' true complaint in this case seems to be that Trans Union should send notice to the consumer by the same method that it sends the consumer report to users. In other words, if Trans Union electronically transmits the consumer report to the user, it should electronically transmit the required notice to the consumer. If it mails notice to the consumer, it should mail the report to the user. This sort of technological symmetry would effectuate the spirit of § 1681k—giving consumers the chance to correct any inaccuracies or discrepancies, or at least to know what the prospective employer knows. Section 1681k(a)(1), however, does not require such technological symmetry. Such a reading would impermissibly add language to the

---

[7] Indeed, two other district courts have found similar processes objectively reasonable, granting summary judgment to the CRA defendant on the issue of willfulness. *Smith v. E-BackgroundChecks.com, Inc.*, 81 F. Supp. 3d 1342, 1363 (N.D. Ga. 2015); *Rodriguez v. Equifax Info. Servs., LLC*, No. 1:14-cv-01142, 2015 WL 4417285, at *5 (E.D. Va. July 17, 2015).

statutory text.  Nevertheless, as the plaintiffs point out, the avenue for changing the law is the legislature, not the courts.

The Court issued a corresponding order on March 13, 2017.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: _____ May 2 , 2017
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

7